### NATIONAL SALT CO. v. INGRAHAM.

(Circuit Court of Appeals, Second Circuit. March 6, 1903.)

#### No. 95.

1. CORPORATIONS—VALIDITY OF CONTRACTS—DISCRIMINATION BETWEEN STOCK-HOLDERS.

Certificates of indebtedness issued by a corporation to a certain class of stockholders, who obtained their stock by exchanging therefor stock of another corporation, by which it obligated itself to make semiannual payments to the holders during five years, pursuant to a contract, the effect of which was to give to such stockholders fixed dividends during such time, regardless of the earnings of the company, are illegal and void.

¶ 1. See Corporations, vol. 12, Cent. Dig. § 581.

**2. NEGOTIABLE INSTRUMENTS—RIGHTS OF PURCHASER—NOTICE OF INVALIDITY.**
A purchaser of certificates of indebtedness issued by a corporation, which contain a reference to the agreement under which they were issued, is chargeable with notice of the contents of such agreement, although the certificates are negotiable in form; and where, because of the illegality of such agreement, the certificates were void in the hands of the original holders, they are also void in the hands of the purchaser; nor does he acquire any greater rights by surrendering such certificates in accordance with their terms, and obtaining new ones in their place, issued in his name.

In Error to the Circuit Court of the United States for the Eastern District of New York.

This cause comes here upon appeal from a judgment of the Circuit Court, Eastern District of New York, entered upon a verdict directed by the court in favor of the defendant in error, who was plaintiff below.

H. P. Twombley, for plaintiff in error.
John J. Crawford, for defendant in error.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The action is brought to recover on 12 separate certificates of indebtedness, amounting in the aggregate to $12,495. They are alike in form; the dates and amounts differing; eight of them ($9,222.50) in the name of plaintiff; four of them ($3,-272.50) in the name of Robert S. Ingraham, who before the commencement of the action assigned them to plaintiff. The following, which is the certificate set out as a first cause of action, shows the form in which they were executed:

"$612.50.                    New Jersey, N. J., February 18, 1901.

"National Salt Company (of New Jersey) hereby agrees to pay at the office of the American Trust Company, Cleveland, Ohio, to George S. Ingraham or order Six hundred twelve and $^{50}/_{100}$ Dollars in seven equal semiannual installments, beginning July 1, 1901. The failure to pay any installment when due shall make all future installments become at once due and payable. Until such default shall have occurred the National Salt Company may at any time cause its liability under this instrument to be discharged by paying the amount of all future installments hereby secured to The American Trust Company of Cleveland, Ohio, in trust to pay the same to the registered holder hereof upon demand.

"Said National Salt Company has agreed that no contract for the purchase of exhaust steam entered into by The United Salt Company prior to October 1st, 1899, and that no improvements erected or to be erected by The United Salt Company for utilizing said steam in the manufacture of salt, shall be mortgaged, encumbered or in any manner disposed of until this obligation is paid or discharged, and that until such time no money borrowed or advanced by the National Salt Company for extending, improving or operating any property of the United Salt Company shall be made a charge upon or lien against the property or assets of the The United Salt Company. And until such payment or discharge shall be made, said National Salt Company has further agreed that The United Salt Company shall not otherwise than by licenses sell or dispose of any interest in any patented process for the manufacture of salt, now owned by The United Salt Company or for which it shall have applied for Letters Patent prior to November 15, 1899, and that upon all licenses issued by said Salt Company, there shall be paid to it a royalty of at least 25 cents per ton, settlement for which shall be made

quarterly. To jointly and ratably secure the payment of this obligation and others of like tenor and also the performance of the foregoing agreements, said National Salt Company has endorsed in blank and deposited with The American Trust Company, of Cleveland, Ohio, as trustee, all stock of the United Salt Company acquired by it under an option given by certain stockholders of said Company, bearing date July 20th, 1899. The terms upon which said stock has been deposited are set forth in a declaration of trust executed by said National Salt Company, dated October 2nd, 1899, and filed at the office of said Trust Company.

"Upon surrender and cancellation of this obligation, the National Salt Company will from time to time upon demand issue new agreements of like tenor for such amounts as the holder may desire, not exceeding, however, in the aggregate the amount then remaining unpaid thereon.

"This instrument shall not be valid until countersigned and registered by the said Trust Company.                              National Salt Company,
          "[Seal.]                                      By A. S. White, President.
     "Attest:
          "John Alving Young, Secretary.
          "[Seal.]'
     "Countersigned and registered.
          "The American Trust Company,
               "By F. F. Sanford, Asst. Secretary.
          "[Internal Revenue stamps, 35 cents.]
     "[Indorsed on back of original certificate:] Internal Revenue Stamps to the amount of 35c. affixed to this instrument and cancelled by me at the request of Geo. S. Ingraham, this 29th day of April, 1902.—Penalty $10 collected.—Chas. H. Treat, Collector, 2nd Dist. N. Y."

Plaintiff bought these 12 certificates from a firm of brokers in February or March, 1901. They stood at that time in different names, and were sent to the American Trust Company of Cleveland to be transferred to his name and to that of Robert S. Ingraham. The certificates sued on are the new ones issued in their names in exchange for those bought. The sale of these certificates carried with it a certain amount of stock of the National Salt Company at 115 (apparently, 100 shares of preferred and 100 shares of common), and stock certificates (i. e., certificates of deposit of this stock) were issued to the Ingrahams by the American Trust Company of Cleveland. The plaintiff testified:

"What I paid, I paid both for the certificate of indebtedness and for these certificates of stock. I understood at the time that the stock was held in the American Trust Company under this trust agreement. I knew that when I bought this stock. That is true as to all of it. * * * There was no separate quotation in the market for such stock as this. Stock of the National Salt Company (part common and part preferred) was quoted at from 115 to 125, but those shares were altogether a different proposition from what we were buying, because those shares carried their dividends, whatever might be declared. Our shares we were to get no dividends on, because we had the certificates of indebtedness; but we were to receive seventeen per cent. on the common and the preferred together, and, of course, the other stock that was sold in the market, about which I was questioned. The amount of dividends that would carry was not determined. That would depend on what in the future was declared by the National Salt Company. So there is no comparison between the two things."

None of the installments stipulated in the certificates of indebtedness were ever paid to the plaintiff. The first installment came due July 1, 1901.

The form of certificates of deposit of stock given to the plaintiff is as follows:

"No. 281. —— Shares Preferred Stock.
"25 Shares Common Stock.

"National Salt Company.

"Incorporated under the laws of the State of New Jersey.

"The American Trust Company, of Cleveland, Ohio, certifies that there have been deposited with it certificates for —— shares of $100 each of the Preferred Stock and twenty-five shares of $100 each of the Common Stock of National Salt Company, a New Jersey corporation, and that George S. Ingraham, or his assigns, will be entitled to receive the said certificates upon performance by said National Salt Company of an agreement entered into by it with certain stockholders of the United Salt Company, bearing date July 20th, 1899, a copy of which is on file with the undersigned, but in no event later than January 1st, 1905, upon surrender of this certificate properly endorsed for cancellation.

"Pending the delivery of such shares of stock and surrender and cancellation of this certificate, the American Trust Company will pay over to the said National Salt Company, or otherwise, as provided in said agreement, any and all dividends received by it upon said shares of stock, and will also vote or cause said shares of stock to be voted at any meeting of said National Salt Company in accordance with the written request of the said George S. Ingraham.

"This certificate is transferable only upon the books of said Trust Company in person or by attorney and upon surrender of this certificate.

"Dated Cleveland, Ohio, February 15, 1901.

"The American Trust Company,
"By F. F. Sanford, Asst. Secy.

"[Indorsement for back of certificate:]

"For Value Received —— hereby sell, assign and transfer to —— all right, title and interest in and to the within certificate, subject to the conditions contained herein.

"Dated ——."

The defendant contends that the certificates of indebtedness were void: (a) Because they were a mere device to guaranty to a part of the stockholders of the National Salt Company for five dividends of 7 per cent. upon the preferred and 10 per cent. upon the common stock, irrespective of whether dividends were earned or not; and (b) because the contracts and agreements of which the certificates were the outcome were illegal and void as against the anti-trust law of Ohio. It will be necessary to discuss only the first of these propositions.

The National Salt Company, a New Jersey corporation, undertook to buy up the United Salt Company of Cleveland, an Ohio corporation, and made a contract of purchase, July 20, 1899, direct with the stockholders of the latter—apparently with all of them except a very small minority. The opinion of the court of common pleas of Ohio in National Salt Co. v. United Salt Co. seems to indicate that the amount of stock sold was, at par, $993,400 out of $1,000,000, but it is not material to the present discussion how large a proportion of the stockholders sold out to the National Salt Company. The terms of sale were as follows: For each share of stock in the United Salt Company there were given 1.25 shares of the 7 per cent. preferred stock and 1.25 shares of the common stock of the National Salt Company. In addition thereto the National Company agreed to pay for

each share of stock of the United Salt Company the sum of $106.25 in cash, payable in 10 equal semiannual installments on the 1st days of January and July of each year, beginning with January 1, 1900. It was further agreed that until these cash payments were fully made the National Company should not mortgage, incumber, or otherwise dispose of any property of the United Company, and that the latter should not dispose of any of its patents. To secure the carrying out of the contract, the National Company deposited with the American Trust Company all the stock of the United Company which it bought under the agreement, and the individuals who thus bought National Company stock with their stock of the United Company deposited what they so bought with the said Trust Company.

It will be remembered that the holder of each share of United Company stock, by this arrangement, bought with it 1.25 shares of 7 per cent. preferred and 1.25 shares of common stock of the National Company. Five years' dividends at 7 per cent. on 1.25 shares of preferred amount to $43.75. Five years' dividends at 10 per cent. on 1.25 shares of common amount to $63.50. The aggregate is $106.25—the amount of cash the National Company agreed to pay in semiannual installments. The written obligations to pay the several amounts of cash to those who thus bought its stock are the certificates of indebtedness, upon some of which this suit is brought. The text of the obligation is given supra. Excerpts from the agreement "bearing date July 20, 1899," and from the "declaration of trust dated October 2nd, 1899," both of which are referred to in the certificates, will more clearly indicate the transaction:

"All dividends paid on the stock of the National Salt Company so to be given the undersigned [i. e., the individual owners of United Salt Company who bought in] in exchange for their stock in the United Salt Company shall be applied toward the payment of the amounts so agreed to be paid, and to insure such application the undersigned [i. e., the individual owners] will deposit said stock with the American Trust Company under a declaration of trust," etc.

The result of these transactions was this: Certain individuals became owners of common and of preferred stock of the National Salt. If that company should earn sufficient to declare at any semiannual period a dividend at the rate of 7 per cent. per annum on its preferred and 10 per cent. per annum on its common stock, this particular class of stockholders would not receive such dividend. It would go to the trust company, to be applied on a separate obligation of the company, by which, independent of any declaration of dividend, it had bound itself to pay these amounts to each stockholder of that class. And if no dividend were earned or declared, and none paid to any stockholder, this particular class of stockholders would nevertheless receive amounts equal to such dividends on the dividend dates, under this separate obligation of the company. It was a very transparent device to guaranty, to such of its stockholders as bought their stock with that of the United Company, the payment of dividends for five years to come at 7 and 10 per cent. on preferred and common stock, irrespective of whether there were any earnings or

profits available to pay dividends or not. In the hands of the stockholders to whom such an agreement to guaranty their dividends was given, we have no doubt it was wholly void.

The only remaining question is whether the plaintiff, who bought the certificates from the original holders, or from some intermediate transferees, has acquired any better title by the transaction. The authorities seem to require a negative answer to this question. In McClelland v. Norfolk Southern R. Co., 110 N. Y. 469, 18 N. E. 237, 1 L. R. A. 299, 6 Am. St. Rep. 397, the coupons sued upon read as follows:

"On the first day of [blank month and year] the Elizabeth City and Norfolk R. R. Company will pay to the bearer at its financial agency in the City of New York, thirty dollars in gold ($30) being six months' interest then due upon its first mortgage bond, No. ———.
"W. S. Dominick, Treasurer."

The court held that:

"The reference in the coupons to the mortgage and bonds, and in the bonds to the terms and conditions of the mortgage, clearly, we think, charges the holders of both coupons and bonds with notice of the provisions contained in each of such instruments."

McClure v. Township of Oxford, 94 U. S. 429, 24 L. Ed. 129, was an action upon coupons detached from the bonds of a municipal corporation, and purchased by the plaintiff in error before maturity. The coupon was in the usual form—promising to pay to bearer the sum of $25 at the American Exchange National Bank, "being the semiannual interest due on bond No. 1, issued April 15, 1872." Referring to the coupons, the court says:

"Upon their face, they refer to the bonds, and purport to be for the semiannual interest accruing thereon. This puts the purchaser upon inquiry for the bonds, and charges him with notice of all they contain."

The documents referred to in the certificate in this case indicate that the agreement was to guaranty dividends, as above described. The transfer of the certificates of indebtedness to the plaintiff for value did not relieve them from any infirmity which made then unenforceable in the hands of the original holders.

Plaintiff's counsel contends that defendant is estopped from raising the defense that the certificates were unenforceable by the original holders, because it has accepted the original certificates, and issued new ones direct to the plaintiff. The authorities cited do not sustain this contention, and we do not find any such change of position by the plaintiff, induced thereto by acts of the defendant, as would make out an estoppel. All that plaintiff did was to give up an old certificate in the name of John Doe, receiving therefor one in his own name, but in all other respects identical.

The judgment is reversed.