PENNSYLVANIA STEEL CO. v. NEW YORK CITY RY. CO. et al.

(Circuit Court, S. D. New York. June 27, 1911.)

Nos. 2—9, 2—33, 2—149, 3—37.

1. CORPORATIONS (§ 473*)—RIGHTS AND REMEDIES OF BONDHOLDERS—REFERENCE TO MORTGAGE.

A reference in bonds issued by a corporation to the mortgage securing the same puts the bondholders and their trustees on notice as to the terms of the mortgage.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1842–1855; Dec. Dig. § 473.*]

2. STREET RAILROADS (§ 54*)—MORTGAGES—CONSTRUCTION—PERSONAL LIABILITY OF MORTGAGOR.

The effect of a provision in a mortgage securing bonds of a street railroad company, that "for the debt and bonds secured hereby the railroad company is liable in personam, and any deficiency, after exhausting the mortgage security, may be enforced against the railroad company," is to require a resort first to the mortgage security, and to limit the personal liability to such deficiency as may remain after such security has been exhausted.

[Ed. Note.—For other cases, see Street Railroads, Cent Dig. § 133; Dec. Dig. § 54.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. STREET RAILROADS (§ 58*)—INSOLVENCY AND RECEIVERS—CLAIMS PROVABLE AGAINST RECEIVERS.

A lease of a street railroad system, made up in part of lines held by the lessor under leases, contained a provision that " the lessee shall also from time to time pay or cause to be paid all rentals and other sums of money which are or may be or become due or payable under or by reason of any leases and other contracts to which any of the demised property is or may be subject, and the lessee hereby assumes all the obligations of the lessor under all such leases and contracts, and the lessee agrees to pay all interest upon the funded debt of the lessor and other fixed charges of the lessor, provided that the lessee shall not be required to pay the principal of any funded obligations of the lessor or of its subsidiary companies except as hereinafter provided." Subsidiary companies were defined in the lease as including companies whose lines had been leased to the lessor, and the lessor had guaranteed payment of both principal and interest of bonds issued by one of such companies at the time and in the manner provided in the mortgage securing the same. Both lessor and lessee became insolvent and receivers were appointed, who surrendered the lease of such subsidiary company's line and restored the property to the owner. The mortgage was not due, but was declared due for default in the payment of interest under a provision therein, although it had not been foreclosed. It contained a provision making the mortgagor liable in personam only for the deficiency after the mortgaged property was exhausted. *Held* (1) that the sums agreed to be paid by the lessee under such provisions of the lease were in the nature of rent, and on termination of the lease the liability ceased as to sums subsequently becoming due; (2) that the liability of the lessor on its guaranty was contingent on there being a deficiency, and that neither principal nor interest of the mortgage debt were provable against the estate of either insolvent company.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 58.*]

In Equity. Suits by the Pennsylvania Steel Company against the New York City Railway Company and others, by the Farmers' Loan & Trust Company, successor to the Morton Trust Company, against the Metropolitan Street Railway Company and others, by the Guaranty Trust Company of New York against the Metropolitan Street Railway Company and others, and by the Farmers' Loan & Trust Company against the Metropolitan Street Railway Company and others. In the matter of claims of the Second Avenue Railroad Company bondholders. On exceptions to report of special master. Exceptions overruled.

This cause comes here upon exceptions to report of special master disallowing the claims of Alexander J. Hemphill and others as holders of first consolidated mortgage bonds of the Second Avenue Railroad Company. The claims were filed separately against the estates (now in receivers' hands) of the Metropolitan Street Railway Company and the New York City Railway Company. The details of the claims with full quotations from the documents upon which they are founded will be found in the exhaustive opinion of the special master which accompanies his report.

Following is the report of W. L. Turner, Special Master:

In addition to the individual claims of bondholders on which the hearings have been had, and which are now submitted for disposition, there have been filed with me in pursuance of orders in that behalf made, by the Guaranty Trust Company, as trustee under the mortgage above referred to, by the

Second Avenue Railroad Company, and by its receiver, claims against the estates in the hands of the receivers of the Metropolitan and City Companies, which arise out of the same transactions. The incidental and unavoidable effect of disposing of the claims now submitted will be to dispose of these latter claims also, and while these claimants, although appearing by the same solicitors as the bondholders, have not been noted on the record as actually represented, I shall, in addition to passing on the submitted claims, indicate the disposition of these claims which I shall recommend to the court.

By an indenture dated January 20, 1898, the Second Avenue Railroad Company mortgaged to the Guaranty Trust Company, as trustee, its property to secure a proposed issue of bonds amounting to $7,000,000, of which $5,682,000 are actually outstanding, and $4,047,000 are represented by individual claimants, and on January 28, 1898, it leased its entire railway system to the Metropolitan Company. The lessee assumed the payment of the bonds in the lease, and by indorsement on the back of the bond before actual issue it guaranteed payment, the assumption clause and guaranty so called being the bases of the claims against its estate. The relevant portions of the bond, guaranty, mortgage, and lease, I quote, italicizing language which has suggested contentions, the bond being as follows: "The Second Avenue Railroad Company in the city of New York, a corporation organized and existing under the laws of the state of New York, United States of America, for value received, promises to pay to the Guaranty Trust Company of New York, or bearer, or, if registered, to the registered owner thereof, the sum of one thousand dollars in gold coin of the United States at the office or agency of the said railroad company in the city of New York, on the 1st day of February, 1948, and to pay interest on the said sum in like gold coin semi-annually at said office or agency on the first days of August and February in each year, on the presentation and surrender of the respective annexed interest coupons. This bond is one of a series of bonds of like tenor numbered consecutively from 1 to 7,000, inclusive, and amounting in the aggregate to $7,000,000 and the payment of the principal and interest of and upon said bonds is equally secured *by and according to the terms of a certain mortgage or deed of trust* duly executed and delivered by the said railroad company to the Guaranty Trust Company of New York, as trustee, bearing date the 20th day of January, 1898, conveying to said trustee, by way of mortgage, the property, rights and franchises described therein."

The coupons annexed both to bearer and registered bonds read as follows: "The Second Avenue Railroad Company in the city of New York will pay to bearer, at the office or agency in the city of New York, twenty-five dollars in gold coin of the United States on the 1st day of ———, being six months' interest on the first mortgage five per cent, gold bond numbered."

The contract of the Metropolitan Company respecting these bonds is not in terms referred to in, nor required by, either the lease or the mortgage, but was indorsed on each of said bonds issued and outstanding prior to their inception and is in the following language: "For value received, the Metropolitan Street Railway Company hereby guarantees *to the trustee of the within mentioned mortgage* for the benefit of the holders hereof the punctual payment of the principal of the within bond and the interest thereon *at the time and in the manner specified therein* and according to the tenor of the several coupons belonging thereto."

The mortgage contains in its third paragraph the following provisions: "If default shall be made in the payment of all or any part of two consecutive installments of the interest hereby secured to be paid, and should the same remain unpaid and in arrears for the space of thirty days after the last of said installments shall become due and be duly demanded, or should any taxes or assessments upon the said mortgaged premises remain in arrears for the space of one year after the same shall become due and payable, then, and in that event, after the lapse of said periods, respectively, the entire principal sum secured by said bonds then outstanding, together with all arrearage of interest thereon, shall forthwith become due and payable,

provided a majority in interest of the holders of said bonds shall so elect and certify their said election in writing to the said trustee, its successors or assigns, signed by them or their lawful attorneys, and duly acknowledged, even though the time in said bonds limited for the payment thereof shall not then have expired, anything in said bonds contained to the contrary thereof notwithstanding.   *   *   *"

The mortgage also provided in the fourth paragraph that in case of default in the payment of the principal, if such default should continue "for sixty days after such payment shall become due *either by the maturity of the bonds or by reason of the declaration of the trustee under the provisions of this mortgage*," it should be the duty of the trustee, on the written request of a majority of the bondholders, to sell the mortgaged property; and in its fifth paragraph, that it should be its duty upon indemnification to execute the power of sale therein granted or to take appropriate proceedings at law or in equity to enforce the rights of the trustee and of the bondholders, the several remedies specified being cumulative and not exclusive one of the other. The mortgage contains no provision authorizing bondholders to sue for principal when the maturity of that principal has been accelerated on the happening of the specified defaults.

In the eleventh paragraph the following language occurs: "For the debt and bonds secured hereby the railroad company is liable in personam, and any deficiency, *after exhausting the mortgage security*, may be enforced against the railroad company, but not against the directors and stockholders individually, and it is expressly agreed between the parties hereto and *by every person who shall take or hold any bond or bonds hereunder*, that the existing and all future directors and stockholders of the railroad company shall not be individually liable to any extent or for any purpose with respect to said bonds or any of them."

The lease from the Second Avenue Company, dated just 8 days later than this mortgage, was for the unexpired term of that company's charter, which was for 99 years, but it covenanted to perform any corporate act appropriate to secure the full enjoyment of the demised premises making the Metropolitan Company its attorney to that end, among others, and it expressly stipulated to take all necessary steps to secure such extensions of its corporate existence as it should be entitled to under the laws of the state of New York, so that the property and franchises demised might be fully secured in possession and enjoyment. As those laws permitted the extension of corporate existence at any time before expiration, and as such existence may be perpetual, the term "demised" was substantially in perpetuity. It recites the making of the mortgage referred to, its purpose, execution, and delivery, and the fact that none of the bonds had been issued and disposed of. Certain promises of the lessor as to the disposition of the bonds, not important to note, are followed by the assumption clause, which reads thus: "This lease is made subject to all debts and liabilities of the party of the first part, except debts due or liabilities incurred to the party of the second part, and such debts and liabilities, except as aforesaid, and subject to the provisions and conditions of the lease, are hereby assumed and are to be paid by the party of the second part as a part of the consideration hereof, and all bonds that shall be issued by the party of the first part *under the mortgage to the Guarantee Trust Company hereinbefore referred to*, when issued and disposed of as hereinbefore provided, or as provided in said mortgage or in this lease, shall be included among the obligations which the party of the second part assumes and agrees to pay under the provisions of the lease."

On February 14, 1902, the Metropolitan demised to the Interurban Company, the name of which was afterwards changed to New York City Railway Company, all the "benefits and rights arising from any and all contracts which the Metropolitan Company has or shall hereafter be entitled to, for the full term of 999 years from the date hereof, as the same may have been or may be acquired by the lessor." By a recital in the lease, companies, the lines of which were leased to, or a controlling interest in the stock of

which was owned by the Metropolitan Company, or by one of its lessor companies, are referred to as subsidiary companies. The Second Avenue Company was one of these and comes within the language of paragraph 3 of this lease, which is the assumption clause relied on by claimants as fastening a provable liability against the estate of the City Company, the paragraph in question being as follows: "The lessee shall also from time to time pay, or cause to be paid, all rentals and other sums of money which are or may be or become due or payable under or by reason of any leases and other contracts to which any of the demised property is or may be subject, and the lessee hereby assumes all the obligations of the lessor under all such leases and contracts, and the lessee agrees to pay all interest upon the funded debt of the lessor and other fixed charges of the lessor, *provided that the lessee shall not be required to pay the principal of any funded obligations of the lessor or of its subsidiary companies,* except as hereinafter provided. All rentals and other payments made, as in this and the preceding article provided, shall be apportioned between the periods respectively preceding and succeeding the date of taking possession hereunder."

On September 24, 1907, receivers of the properties of the New York City Company were appointed by this court, and on October 1, 1907, the same receivers were appointed of the properties of the Metropolitan Company. The interest coupons, maturing February 1, 1908, after their appointment, were paid by the receivers, but those maturing August 1, 1908, were not, and on November 5, 1908, the court entered its order instructing its receivers not to adopt the Second Avenue lease. Coupons maturing subsequently have accordingly remained unpaid, as have the taxes for more than the year specified in the mortgage, and a majority of the bondholders having on the 18th of February, 1910, requested the trustee so to do, it did on the 21st day of February in pursuance of the mortgage, notify the railroad company that it declared the entire principal secured by said bonds then (as now) outstanding, viz., the sum of $5,682,000, together with the interest due, to be forthwith due and payable. A foreclosure suit had been commenced in the national court by the trustee against the Second Avenue Company in 1908, and a similar suit in the state court, and in this latter action by an order entered September 19, 1908, a receiver has been appointed of the mortgaged property of the defendant company, but no decree has been entered in either suit nor a sale had, and, of course, no judgment for any deficiency has been entered.

Counsel for the claimants in the main brief filed in their behalf has urged the provability of the bondholders' claims against the estate of the New York City Railway Company for the amount of the principal of the bonds upon two theories. One of these theories has been definitely abandoned in the reply brief filed by him and the other he abandoned in the oral argument though not in the brief, so that both for the sake of identification as well as to indicate the reasons for rejecting them, they are here stated before taking up the more serious and difficult contentions suggested by the guaranty, and the assumption clause entered into by the Metropolitan Company respecting principal and interest, and by the similar assumption clause entered into by the City Company respecting interest.

The first theory was that the true construction of paragraph 3 of the Interurban (City) lease above quoted is that the City Company (lessee) was not bound to pay the principal of any funded debt merely because the Metropolitan Company had created the debt or was liable as guarantor thereon, but that if the payment of such funded debt constituted an obligation under one of the underlying leases, then it was assumed by the lessee in common with all "other sums of money which are or may be or become due and payable under or by reason of any leases." The language of the exception from the language quoted, however, is that the lessee "shall not be required to pay the principal of any funded obligations of the lessor's subsidiary companies," which, by the recital I have referred to, are defined so as to include the Metropolitan's lessor companies, of which the Second Avenue Company was one, and as it is beyond dispute that the claimant's bonds are a funded obli-

gation of a subsidiary company, it is clear that so far as they represent principal they come within the exception, whether the Metropolitan was liable to pay them, either primarily or as guarantor. or not.

On the other theory, it was claimed that the City Company by the lease to it became the assignee of the lease from the Second Avenue Company to the Metropolitan and liable as such to pay both principal and interest by reason of a resulting privity of estate, whether it had, in the lease to it, by express language assumed such payment' or not.

This theory rests on the assumption that the Metropolitan demised to the City Company its entire interest in the unexpired term of the Second Avenue Company's lease to it, retaining no reversionary interest, however slight, but as has been stated, the latter lease was practically in perpetuity, while the lease to the City Company was for 999 years, so that under the authorities there being a reversionary interest left in the lessor, it was a sublease of Second Avenue properties, and not an assignment, with its resulting obligation as to such covenants in the lease assigned as ran with the land, of which covenants of assumption of existing indebtedness may or may not be types (Stewart v. L. I. R. R. Co., 102 N. Y. 601, 8 N. E. 200, 55 Am. Rep. 844; Herzig v. Blumenkrohn, 122 App. Div. 758, 107 N. Y. Supp. 570.

As neither the bondholders nor their trustee are parties to the contracts evidenced by the guaranty indorsed upon the bonds and by the assumption clauses contained in the leases, it is evident that their claims must rest upon the doctrine laid down in Lawrence v. Fox, 20 N. Y. 268, permitting a third party to sue upon a contract made for his benefit. Counsel for both receiverships earnestly urge that the doctrine of that case has never been unreservedly adopted in the federal courts, and has been so far limited and qualified in New York that it is not applicable to the facts suggested by these claims. I think, however, that under the federal decisions the rights of claimants are to be determined by the law of the place where the claims are asserted and their subject-matter lies even though they be asserted in a federal forum (Union Life Ins. Co. v. Hanford, 143 U. S. 187, 12 Sup. Ct. 437, 36 L. Ed. 118; Johns v. Wilson, 180 U. S. 440, 21 Sup. Ct. 445, 45 L. Ed. 613), so that, in passing on the contentions, the discussion narrows itself to an application to the suggested facts of the doctrine as evolved in the decisions of the state courts.

The qualifications relied on are two in number; the first being that there must be some obligation or duty owing from the promisee to the third party which would give that party an equitable right to compel the former to bring suit, and, the second,' that the contract must be made for the third party's benefit as its object, and that he must by its express terms be identified as one whom it is intended to benefit. The New York cases cited are Simson v. Brown, 68 N. Y. 355, Vrooman v. Turner, 69 N. Y. 280, 25 Am. Rep. 195, and Durnherr v. Rau, 135 N. Y. 219, 32 N. E. 49. In the first case a mortgagee assigned to plaintiff the bond and mortgage, and the mortgagor, without notice of the assignment, paid the mortgagee, thereby freeing himself from liability to any one. Thereafter the mortgage executed a penal bond to the mortgagor conditioned on payment to plaintiff and the saving of the mortgagor harmless, and this bond defendant guaranteed. Plaintiff, assignee of the first-mentioned bond and its mortgage, sued on the guaranty of the latter bond as made for his benefit, but the court held that the obligation guaranteed was not to pay to plaintiff, but to the mortgagor, the condition in which alone the plaintiff was mentioned being, not a promise, but an alternative for the benefit of the obligor, and that the fact that the performance of the condition would. have worked consequentially a benefit to plaintiff did not give him a right of action, as it did not appear from the contract that it was intended for his benefit. Vrooman v. Turner decides that a grantee of real estate who has assumed payment of an outstanding mortgage cannot be sued on his promise for a deficiency by the holder of the mortgage as third party, if his grantor, the promisee, was not personally liable to pay the mortgage, either as principal debtor or as the result of assumption, because there existed no legal right in such third party founded upon some obligation of the promisee

to him to adopt and claim the promise as made for his benefit. In Durnherr v. Rau, plaintiff and her husband made a deed to defendant with covenant of warranty, plaintiff reserving her right of dower, and by the deed the defendant as grantee covenanted to pay all incumbrances by mortgage or otherwise. An outstanding mortgage thus assumed in which the plaintiff had joined with her husband having been foreclosed and the premises sold, plaintiff sued on the covenant of assumption for the deprivation of her dower right, but the court held that whatever his moral obligation may have been, as the husband was under no legal obligation to the plaintiff to pay off the mortgage for the purpose of saving that right, there did not exist such a legal relation as made the performance of the covenant a satisfaction of some legal or equitable duty owing by the husband as grantor and promisee, to her as third party, and that such a relation was essential to an action by her, as such.

These cases undoubtedly sustain the distinctions asserted and the question is whether the claims under consideration are within them so that neither the bondholders nor their trustees have a right of action. It is not contended that the contract evidenced by the Metropolitan guaranty is, since it by its terms provides for payment to the trustee for the bondholders and the necessary legal obligation running from the Second Avenue Company as promisee to such trustee as third party is present, the effect of the guaranty as establishing a claim provable now, being resisted on other grounds. It is insisted that they control as to the contracts of assumption contained in both leases; counsel for the Metropolitan receivers arguing that the Metropolitan's promise of payment contained in the lease to it comes within both grounds of distinction, and counsel for the receiver of the City Company arguing that as the debt was pre-existing at the time of the assumption of interest payments in the lease to it, the promise can be regarded as made solely for the benefit of the Metropolitan Company and not of the bondholders, citing federal authorities which tend to sustain such contention. It seems to be clear, however, under the New York authorities that where one owing a debt leases, conveys, or assigns property to another on the strength of the latter's promise to assume and pay the debt, without any more specific designation of the creditor than such words imply, there is a legal presumption that the latter was intended to be benefited, and as the necessary obligation from the promisee to him as third party exists he may accordingly sue. Burr v. Beers, 24 N. Y. 178, 80 Am. Dec. 327; Wager v. Link, 134 N. Y. 127, 31 N. E. 213; Clark v. Howard, 150 N. Y. 232, 44 N. E. 695. It does not matter that the primary and perhaps the only purpose of the parties to the contract was to benefit the debtor, the creditor may, nevertheless, as third party, adopt it when he learns of it, unless, indeed, the contract by express terms negative the right.

Assuming, then, that the bondholders or their representative, and the Second Avenue Company or its receiver, have claims which may be asserted, either at once, or in the future, against the Metropolitan and City Companies respectively by virtue of the guaranty and these assumption clauses, there remains to be considered whether such claims are provable in favor of any of the parties named against the estates of these last-mentioned companies now in the custody of the court. The rights of the claimants are to be determined by the contracts of guaranty or of assumption, as the case may be, and by those contracts alone; and it is not, I think, to be doubted that if these contracts evidence claims, whether solvable now or in the future, which depend upon a contingency which has not yet happened, they are not, in the absence of a statute in express terms directing it, provable in a court of equity engaged in administering the estate of an insolvent corporation. In insolvency. Gay Mfg. Co. v. Gittings (4th Cir.) 53 Fed. 45, 3 C. C. A. 422; New York Sec. & Trust Co. v. Lombard Investment Co. (C. C. West Mo.) 73 Fed. 537; Fidelity Safe Deposit Co. v. Armstrong (C. C.) 35 Fed. 567; Malcomson v. Wappoo Mills (C. C.) 88 Fed. 680; People v. Globe Mutual Life Ins. Co., 91 N. Y. 174; People v. Commercial Alliance L. I. Co., 154 N. Y. 95, 47 N E. 968; Deane v. Caldwell, 127 Mass. 242; Wells v. Hartford

Manila Co., 76 Conn. 27, 55 Atl. 599. In bankruptcy, Roth v. Appel (2d Cir.) 181 Fed. 667, 104 C. C. A. 649; In re Pettingill & Co. (D. C.) 137 Fed. 143.

An examination of the guaranty as heretofore quoted shows that the precise engagement of the Metropolitan Company is to guarantee the "punctual payment of the principal of the bond and the interest thereon at the time and in the manner specified therein." The time specified in the bond for the payment of principal is February 1, 1948, and of interest semiannually, on August 1st and February 1st in each year, and on each bond there is this statement that the payment of all of the bonds identified is "equally secured *by and according to the terms*" of the mortgage described. This reference the claimant bondholders originally contended has the effect of incorporating into the bond and through it into the guaranty those provisions of the mortgage above set forth which have for their object the acceleration of the maturity of the bond, and that, as both bondholders and trustee have already acted on them, the effect has been to precipitate that maturity so that the bonds are now due for all purposes. That contention they now abandon, adopting the view originally insisted on by both receiverships, which is in turn modified, to the effect that the reference to the mortgage is for the purpose of identification merely, and not of incorporating all of its terms into the bond, and that the bonds do not mature until the date named therein, until which time there is no right of action in personam in favor of the bondholders against either the debtor or its guarantor. The bondholders strive to avoid the effect of their concession by insisting that an absolute and unconditional promise based on a valid consideration constitutes a claim provable against the estate of an insolvent corporation even though it be payable in the future—debitum in praesenti, salvendum in futuro—and this, while disputed, is, I think, the rule (Deane v. Caldwell, supra). They further insist that all their remedies whether against primary or secondary debtors or the insolvent estates may be pursued concurrently or singly and without foreclosure with the limitation that the aggregate amount collected shall not exceed the total due them. This latter contention they rest on two cases which constitute their main reliance, Matter of Simpson, 36 App. Div. 562, 55 N. Y. Supp. 697, affirmed, 158 N. Y. 720, 53 N. E. 1132, and Thorp v. Keokuk Coal Co., 48 N. Y. 253, which are instances of claims asserted by third parties on promises made for their benefit. In both of these cases the promises construed related to debts which had matured which they now insist is not the case here, and what is of more importance, the promises of payment there construed were absolute and unconditional, a fact which, as a reference to the opinions in both cases will show, the court was careful to emphasize. If, then, the effect of the reference to the mortgage which the bond contains was to import into the contract which it evidences terms from that document which make it contingent, it is clear that these cases do not control, and that none of the claimants, either the bondholders individually, their trustee, the Second Avenue Company, or its receiver, has a claim provable in a class with creditors holding fixed obligations, if that contingency has not yet happened. Gay Manufacturing Co. v. Gittings, 53 Fed. 45, 3 C. C. A. 422.

That the reference in the bond to the mortgage does put the bondholders and their trustee on notice as to its terms seems to me to be beyond question under the authorities notwithstanding such uncertainty as the exigencies of a discussion from very different standpoints may have involved the question. In Mallory v. West Shore R. R. Co., 35 N. Y. Super. Ct. 174, bondholders brought actions in personam on bonds, which, unlike these here, contained no reference whatever to a mortgage, but had indorsed upon the back of each a certificate of the trustee that it was one of a series equally secured in accordance with the terms and conditions of the mortgage specified. This the court treated as importing into the bond such terms and conditions and it held that its provisions similar to those here appearing looking to an acceleration of the maturity of the principal on the happening of specified defaults did not give a right of action in personam to the bondholder but only a right to the trustee under the mortgage to foreclose. Batchelder v.

Council Grove Water Co., 131 N. Y. 42, 29 N. E. 801, and Dougan v. Ev: & T. H. R. R. Co., 15 App. Div. 492, 44 N. Y. Supp. 503, suggest instances in· which rights of bondholders asserted in actions on the bond have been held to be qualified by the terms of a mortgage referred to in the bond and while the words of reference there construed are somewhat more direct with reference to the qualification there sustained, which is the same as that in the West Shore case cited. they illustrate a general principle that such references do put the bondholder on notice and qualify his rights. Moreover, that the mortgage here involved was intended by the parties to it to have just that effect is clear from its language. Thus in the eleventh paragraph which I have quoted in full "every person who shall take or hold any bond or bonds issued hereunder" is made to agree that "existing and future directors and stockholders shall not be individually liable as to said bonds"—a provision which would be absurd, if the reference to the mortgage in the bond had not been regarded as sufficient to put the bondholder on notice as to the mortgage and its terms and to qualify his rights.

Adopting, then, the view that the mortgage by the terms of the bond itself is part of the bondholders' contract it remains to be determined whether it contains provisions making that contract contingent. The paragraph relied on as having that effect is this same eleventh paragraph which states that "for the debt and bonds secured hereby the railroad company is liable in personam and any deficiency. *after exhausting the mortgage security*, may be enforced against the railroad company." By this clause it is insisted the railroad company intended to limit its obligation in personam to the payment of any deficiency after exhausting the mortgage security and it is clear, if it have that effect, that not only is the amount of the bondholders' claim contingent but the very existence of any claim whatever is dependent upon an event which not only has not yet happened, but may never happen. It is quite the same as the claim rejected as provable in Lamson Consolidated Stove Service Co. v. Bowland, 114 Fed. 641, 52 C. C. A. 335, where Judge Lurton says that "the liability of the lessee would be contingent upon a deficiency and clearly not such a fixed and absolute liability as would be provable in bankruptcy." The claimants, besides insisting that the mortgage is no part of the bond, say that the words quoted were not intended to cut down the railroad company's liability in personam, but only to "exclude the idea of an election of remedies by virtue of which it might be claimed that a sale of the mortgaged property relieved the mortgagor from personal liability." If, however, the language quoted were not present, the liability in personam, unconditioned and absolute, would nevertheless result from the language of the bond in the absence of anything else in the mortgage to the contrary, and there not only is nothing to the contrary, but there is an explicit declaration that the several remedies specified are cumulative and not exclusive and are in addition to all other remedies. Unless, therefore, this language have the meaning attributed to it, it would be without meaning and mere surplusage and such meaning must, I think, be assigned to it.

What the Metropolitan Company undertook by the assumption clause in the lease from the Second Avenue Company to it was to pay "all bonds that shall be issued by the party of the first part (the Second Avenue Company) *under the mortgage* to the Guaranty Trust Company" therein referred to. Its engagement is to pay the bonds issued under that mortgage, and if the bond as qualified by the mortgage suggests a contingent liability, the obligation of the Metropolitan created by this assumption clause must be held to be contingent also.

So, by the guaranty, the undertaking running to the "trustee of the within mentioned mortgage" is to guaranty the punctual payment of the bond *at the time and in the manner* specified therein. If the time and manner specified include not only the time fixed in the bond but, as originally contended, any earlier date as determined under the provisions of the mortgage, then, in this latter event, the mortgage controls as to such time and manner, the promise guaranteed is to pay a deficiency—if the Second Avenue Company's promise be to pay only the deficiency—and the guaranty becomes

in effect one of collection the breach of which has not yet occurred, so that there exists no claim based upon it which is now provable. On the other hand, if the construction now placed on these writings by the learned counsel for the claimant be the correct one, and the date of maturity has not been hastened, the contract of guaranty suggests another contingency that has not yet happened, for it becomes then a guaranty of punctual payment on February 1, 1948. The obligation of the Metropolitan Company, evidenced by the guaranty, whether a contract of suretyship in the strictest sense of the term, or not, and it perhaps is not, since the consideration undoubtedly moved directly to it instead of wholly to the party named as principal debtor as in the case of the usual contract to answer for the debt, default, or miscarriage of another, is nevertheless distinctly a secondary obligation. No action for the principal sum against it would lie on such guaranty which did not turn on an allegation that the Second Avenue Company had failed punctually to pay on February 1, 1948, such sum (First Natn'l Bank of Waterloo v. Story, 200 N. Y. 346, 93 N. E. 940), so that any cause of action on any theory of construction of the bond which makes that date control, leaves the claim still dependent on a future contingency which, improbable as it now seems, may never happen (Gay Mfg. Co. v. Gittings, supra).

The asserted liability of the City Company respecting the interest on the Second Avenue debt is based on the broad assumption in the lease from the Metropolitan to it, of "all the obligations of the lessor under all leases and contracts" from which alone the principal of the funded debt of the lessor and its subsidiary companies is, as noted, excepted. The claimants contend that this agreement, in legal meaning and effect, is, to pay certain installments of money evidenced by the interest coupons at certain specified times in the future in consideration of receiving the leasehold estate which was demised by the lease of February 14, 1902, and that a sum representing the aggregate of the present worth of the outstanding coupons, ascertainable by a comparatively simple arithmetical calculation when the prevailing rate for money has been established by competent proof, is provable as a claim against the estate of the City Company. The obligation resulting from the language of the covenant, it is urged, is not to pay sums accruing at intervals in the nature of rent, in which case it is conceded that it would be contingent and not the basis of provable claim; nor is it to pay sums accruing at regular intervals in the nature of an interest charge, in which case none not due at the date of the appointment of the receivers (and none was) would be provable (Sexton as Trustee v. Dreyfus, 219 U. S. 339, 31 Sup. Ct. 256, 55 L. Ed. 244, Jan. 23, 1911), but it is a new obligation, absolute and unconditioned in its nature and provable as such, distinct from that owed by the Metropolitan Company and based on an equally new and distinct consideration moving to the City Company, to pay a sum representing the aggregate of the coupons maturing after the lease to the City Company became effective in installments at fixed future intervals and not terminable, without the consent of the claimants, by anything that might be done by lessor and lessee, or might happen to either or both of them.

I cannot assent to this construction of the language of the covenant. The promise is to assume "all the obligations of the lessor under all such leases and contracts," of which the lease from the Second Avenue Company is one. If the obligation assumed is absolute, then the obligation of the City Company respecting it is absolute also. If, on the other hand, it is contingent, then the obligation of the City Company is contingent. If the obligation of the Metropolitan Company under the lease to it is what I think it—a promise to pay any deficiency of principal and interest due—then the promise of the City Company is to assume that and not any other or different obligation. The obvious purpose of the covenant is to put the City Company in the position of the Metropolitan respecting obligations owed by the latter under its underlying leases, and there is much room for the answering contentions of the receiver that the obligation under examination should justly be regarded as creating either a rental or an interest charge, but if the claimants' contention were to prevail, it is clear that, as the matter now stands, the

City Company would owe a sum in excess of the sum to become due as interest when a sale under foreclosure is had, if such sale take place at any time in the reasonably near future, for it is for the latter sum only as interest that either the Second Avenue or the Metropolitan would be ultimately liable, since the obligation to pay interest accruing after the sale and up to February 1, 1908, would cease except as to the deficiency if any. This clearly was not the intention of the parties as disclosed by the language they have used.

It is urged on behalf of the receivers of the Metropolitan Company that no rights either under the guaranty or the assumption clause can be asserted by bondholders individually as beneficiaries of an express trust save through the trustee, the argument being that even if the rule of procedure laid down by section 449 of the New York Code of Procedure, permitting the real party in interest to sue apply in an action in the state courts, it is contrary to the settled equity practice as administered in the United States courts, which is unaffected by any state rule of procedure and controls here. I, myself, doubt whether under that section the beneficiary of an express trust may sue without alleging the refusal or inability of the trustee to act, even in the state courts (Matter of Straut, 126 N. Y. 212, 27 N. E. 259), and there seems to be authority for the contention that the only rule that can be applied in this forum is that insisted on (Wills v. Pauly [C. C.] 51 Fed. 257), in which case it is clear that the bondholders have no rights under the guaranty which they can now assert individually, as that agreement runs in terms to their trustee as such, although it is perhaps not so clear that they may not assert rights under the assumption clause, since the bonds run to bearer. As, however, the view that I have taken of the effect of these contracts makes it unnecessary to pass upon this question although the facts may suggest it, I do not do so, especially as it may arise in other proceedings pending before me as special master under the orders of the court made in these actions in which it may be vital, and can be passed upon after argument in opposition has been had.

It is obvious that if the claim of any of these claimants were allowed, there would be accorded a preference over creditors whose liabilities were absolute that equity, which seeks equality, tries to avoid. The factor fixing the amount of any distributive share would be determined, once and for all, to be the amount of bonds outstanding, whereas the amount, if any, which may become due, after resort to the security, is very certain to be far removed from any such figure. It is of course true that if a deficiency result, these bondholders will be excluded from participation unless the assets in the custody of the court should prove more than sufficient to meet fixed liabilities, but, as is pointed out in the case of Wells v. Hartford Manila Company, supra, that is because the law attaches a higher right to this class of liabilities.

The receivers may file and serve proposed reports on or before March 15, 1911, embodying findings and conclusions in accordance with the foregoing, the claimants to have five days thereafter to file proposed amendments and objections thereto.

Davies, Auerbach, Cornell & Barry (Julien T. Davies and Brainard Tolles, of counsel), for claimants.

Masten & Nichols (William M. Chadbourne, of counsel), for receivers of Metropolitan Street Railway Company.

Dexter, Osborn & Fleming (Matthew C. Fleming, of counsel), for receiver of New York City Ry. Co.

O'Brien, Boardman & Platt (George N. Hamlin, of counsel), for contract creditors' committee.

Charles Benner (Benjamin S. Catchings, of counsel), for tort creditors' committee.

Geller, Rolston & Horan (Charles T. Payne, of counsel), for Farmers' Loan & Trust Co.

LACOMBE, Circuit Judge. On January 20, 1898, the Second Avenue Railroad Company executed a mortgage of all its real estate, franchises, railroad property, and equipment, then owned or thereafter to be owned, to secure an issue of bonds of which $5,682,000 are actually outstanding. The petitioners are the owners and holders of nearly $4,000,000 of these bonds. At about the same time the Second Avenue Company leased its entire railway system to the Metropolitan Street Railway Company. That company assumed the payment of these bonds in the lease, and by indorsement on the back of each bond before actual issue it guaranteed to the trustee of the mortgage for the benefit of the holders punctual payment of principal and interest "at the time and in the manner specified therein." In 1902 the Metropolitan leased its entire system to the New York City Railway Company which thereby became a sublessee of the Second Avenue road. The New York City by its lease undertook to pay all rentals and other sums of money (except principal) which the Metropolitan was obligated to pay under any leases or other contracts by which it had acquired possession of the property of the various subsidiary companies which made up its system. On September 24, 1907, receivers of the New York City Company were appointed by this court, and on October 1, 1907, the same individuals were appointed receivers of the Metropolitan. They held the estates of both companies until midnight of July 31, 1908, when a separate receiver of the New York City Company was appointed. The principal of the mortgage debt of the Second Avenue road was to come due February 1, 1948. The instrument contained the usual provisions for declaring principal due upon default in the payment of interest; also the usual provisions for foreclosure.

Being uncertain at first whether or not the Second Avenue road was a valuable part of the system, the receivers paid the coupons which fell due February 1, 1908, but subsequently decided not to accept the lease. They defaulted on the interest due August 1, 1908, and returned the road to its owners. Promptly upon default (in August or September, 1908) the mortgage trustee began a foreclosure suit in the state court, and a receiver of the property of the Second Avenue road was appointed September 19, 1908. There is no suggestion anywhere in this record of any possible defense which the mortgagor might have sustained to the foreclosure suit, nor even of any ostensible defense which might have operated to delay the trustee in performing its duty to collect the amount secured by the mortgage out of the property primarily liable therefor, so far as the same would go. Strange to say, however, the foreclosure suit has not been pressed, no decree has been entered, and of course there has been no sale and no judgment for any deficiency. So far as this record discloses the value of the property enumerated in the mortgage may be greatly in excess of the amount of bonds issued thereon. In February, 1910, in compliance with request of a majority of the bondholders the trustee notified the mortgagor that it elected to declare the entire principal due.

The record does not show whether or not the bondholders who have filed these claims or a majority of them, are also stockholders of the

Second Avenue road. If they are, it can be easily understood why the foreclosing trustee has been thus held back till the claims now under consideration could be filed and prosecuted against the estates of the lessee (and guarantor) and the sublessee. The claims were filed in February, 1910. Briefly stated they are as follows:

It is contended that the Metropolitan Company should pay to the holders of these bonds the full amount of the principal thereof (less the present value of coupons paid subsequent to October 1, 1907) amounting to $3,979,854.38. It is also contended that New York City Railway should pay all the coupons falling due till February 1, 1948 (with proper rebate for present payment), as if each coupon were its own promissory note due at the future date named therein. This amounts to $3,438,039.07. It is not understood that any preference is insisted on for either of these claims, but it is contended that they are entitled to share in the assets equally with the creditors of these two roads. If it should come to pass, in some way, that these estates could marshal enough assets to pay their debts substantially in full, the Second Avenue bondholders would thus collect the amount of their bonds, principal and future interest, without taking anything from the estate of the Second Avenue road which was the primary security for the loan. Such a result seems most inequitable, but as the special master points out in his careful and exhaustive discussion of the question the documents which regulate and define the rights of respective parties do not lead to any such conclusion.

[1] It is not thought necessary to add anything; the court concurs fully in his opinion. Whatever may have been held in other jurisdictions it is certainly the rule in this circuit that the reference in the bond to the mortgage does put the bondholders and their trustees on notice as to its terms. National Salt Co. v. Ingraham, 122 Fed. 40, 58 C. C. A. 356.

[2] As to the clause in the mortgage that "for the debt and bonds secured hereby the railroad company is liable in personam and any deficiency, after exhausting the mortgage security, may be enforced against the railroad company," I concur with the special master in concluding that it would be superfluous and meaningless, unless it be construed as requiring that resort be first had to the mortgage security.

[3] As to the agreement of the New York City Company to pay all the various sums of money which its lessor, the Metropolitan, was obligated to pay from time to time in order to maintain possession of the various subsidiary roads which made up its system, and all other sums which it agreed to pay to persons designated by its lessor, I am very clearly of the opinion that, by whatever name called, they are in reality rent agreed to be paid for the use of the property leased, and, upon the termination of the lease, should be treated accordingly.

The exceptions are overruled, and the report of the special master is confirmed.