### CROSTHWAITE v. MOLINE PLOW CO.

(District Court, S. D. New York. April 29, 1924.)

1. **Corporations ⊙⟶463—Notes issued pursuant to trust agreement must be read together with trust agreement.**

Notes issued by corporation, referring to trust agreement and expressly stating that notes were issued thereunder, must be construed in connection with such trust agreement.

2. **Corporations ⊙⟶499—Restriction in trust agreement as to right to sue on notes held effective, notwithstanding unconditional promise to pay.**

Provision of trust agreement precluding commencement of action on notes issued by corporation thereunder, unless trustee shall have refused to bring action on request of holders of 25 per cent. in amount of outstanding notes, *held* to preclude action on notes by holder thereof in violation of such provision, though notes contained an unconditional promise to pay, in view of recital in notes referring to trust agreement and expressly stating that notes were issued thereunder.

3. **Corporations ⊙⟶463—Holders of notes charged with notice of terms of trust agreement.**

Holders of corporation's notes, referring to trust agreement and stating that the notes were issued thereunder, were charged with notice of all the terms of the agreement.

At Law. Action by John L. Crosthwaite against the Moline Plow Company, now known as the Illinois American Plow Company. On plaintiff's motions for judgment on pleadings, and defendant's motion to dismiss complaint. Plaintiff's motion denied, and defendant's motion granted.

Lannon & Bailey, of New York City, for plaintiff.
Shearman & Sterling, of New York City, for defendant.

WINSLOW, District Judge. There are two motions before the court. The plaintiff moves for judgment on the pleadings, and the defendant moves to dismiss the complaint. The complaint and the moving affidavits show that the plaintiff is the owner of five 7-per cent. serial gold notes, series D, for $1,000 each, issued by the Moline Plow

Company, and payable to bearer; that the notes matured on September 1, 1922, and that the principal and interest thereon have not been paid, although duly demanded. The answer admits the issuance of the notes, ownership by the plaintiff, and nonpayment at maturity, but alleges as a defense that the plaintiff's notes were a part of an issue under and pursuant to a certain agreement, dated September 1, 1918, between the defendant, Moline Plow Company, and Central Union Trust Company of New York, as trustee, which agreement contains the following provisions:

"Section 4. No holder of any note issued hereunder shall have the right to institute any suit, action, or proceeding, at law or in equity, for the collection of any sum due from the company on such note, for principal or interest, or upon or in respect of this agreement, or for the execution of any trust or power hereof, or for any other remedy under or upon this agreement, unless such holder shall previously have given to the trustee written notice of an existing default, and unless, also, such holder or holders shall have tendered to the trustee security and indemnity satisfactory to it against all costs, expenses, and liabilities which might be incurred in or by reason of such action, suit, or proceeding, and unless, also, the holders of 25 per cent. in amount of the notes then outstanding shall have requested the trustee in writing to take action in respect of such default, and the trustee shall have declined or failed to take such action; it being intended that no one or more holders of notes shall have any right in any manner to enforce any right hereunder, or under or in respect of any of the notes, except in the manner herein provided, and for the equal proportionate benefit of all holders of the outstanding notes."

It is further alleged that the notes held by the plaintiff each contain the following provisions:

"This note is one of an issue of notes of the company, all of like date, tenor, and amount, except as to the maturity thereof, which notes shall not exceed the aggregate principal amount of $6,000,000, and are all issued under and pursuant to a certain agreement, dated September 1, 1918, executed by the company and the Central Union Trust Company of New York, as trustee, to which agreement reference is hereby made for a description of the terms under which the said notes are issued, and of the rights and obligations of the company and the trustee with respect thereto."

"Trustee's Certificate.

"This is one of the notes described in the within mentioned agreement.
"Central Union Trust Company of New York, as Trustee,
"By ―――――――."

The answer further alleges that the conditions precedent to the bringing of an action by the holder of any of said notes as set forth in section 4 above quoted have not been complied with, and that prior to the commencement of this action the plan and agreement of reorganization of the defendant became effective, under which plan and agreement holders of $3,863,000 out of $4,000,000 of said notice, and creditors holding claims of $18,084,745.52 out of a total of $18,109,807.46 of such claims, deposited their notes and claims and agreed to accept the securities provided in the plan; that, relying upon the terms and provisions under which the notes held by the plaintiff were issued, the defendant put said plan and agreement into execution, and transferred, assigned, and conveyed, pursuant to the terms of the plan, all its assets to the Moline Plow Company, a new corporation organized under the laws of Virginia.

The question is thus presented whether an individual holder of notes issued under such an agreement can maintain this action contrary to the express provisions of the agreement and in derogation of the rights and contrary to the desires of the remaining 96½ per cent. of the other note-holders and 99½ per cent. of the other creditors. The plan of reorganization is set forth in the answer. The plaintiff's notes, under said plan, are entitled to participate in the new securities issued thereunder in like manner with holders of similar notes, and it is alleged that the new securities provided for under the plan and agreement are available for delivery to the holder of the plaintiff's notes upon presentation and surrender thereof in like manner with the other assenting holders.

The precise question before the court is whether or not the plaintiff, upon purchasing the notes, took them subject to the terms of the agreement when they were issued. The plaintiff contends that the notes contain an unconditional promise to pay, and that the provisions to which reference is made in the trust deed are inconsistent with the terms of the notes, and therefore the alleged unconditional promise in the notes must prevail over the alleged inconsistent provisions of the trust agreement. The notes in suit, however, contain the statement that they are issued under the trust agreement dated September 1, 1918, executed by the company to the trustee, "to which agreement reference is hereby made for a description of the terms under which the said notes are issued, and of the rights and obligations of the company and the trustee with respect thereto." There appears also in the notes the words:

"This is one of the notes described in the within mentioned agreement."

[1, 2] I am of the opinion that the notes and the trust agreement are not inconsistent, but must be read together in order to ascertain the provisions of the entire contract. The provisions incorporated in the trust agreement are not at all unusual, and, in order to find that these provisions are inconsistent with or contradictory of the language of the notes, it would be necessary to entirely ignore the express language of the notes calling attention to the provisions of the mortgage.

[3] The court is of the opinion that the holders of the notes under the language quoted were charged with notice of all of the terms of the agreement. To hold otherwise would be to find that the reference to the agreement was meaningless. In Babbitt v. Read, 236 Fed. 42, 149 C. C. A. 252 (C. C. A. 2d Cir.), reported below 215 Fed. 395, the court said (page 44 [149 C. C. A. 254]):

"The plaintiff resorts, therefore, to the fact that the bonds did not incorporate the limitation, except by reference to the mortgage. Yet it has always been held that such a reference makes the provisions of the mortgage a part of the contract, as much in this case as in one where the instrument is prepared with the deliberate scrutiny of both sides. Natl. Salt Co. v. Ingraham, 122 Fed. 40, 58 C. C. A. 356; McClelland v. Norf. S. R. Co., 110 N. Y. 469, 18 N. E. 237, 1 L. R. A. 299, 6 Am. St. Rep. 397; McClure v. Oxford, 94 U. S. 429, 24 L. Ed. 129. It would indeed be only a fictitious protection to insist that such provisions as this should be incorporated in the bonds The investor who would read with so much care the whole of a bond so voluminous as it would become, were all the limitations included, would be as likely to look at the mortgage, if the bond referred to the mortgage. Buying such bonds is not, like taking a bill of lading from a common carrier, an everyday incident

of common affairs. Those who wish in any case to read the extended text carefully have now the power to go to the printed mortgage, and are as likely to do so as though the bond itself contained all its limitations. Certainly we may not say that such a company is under a public duty against which it may not contract by sufficiently explicit language."

See, also, Watson v. Chicago, Rock Island & Pacific Ry. Co., 169 App. Div. 663, at pages 665, 666, 155 N. Y. Supp. 808.

It has been held in this court, and also in the United States Supreme Court, that it would be most inequitable to allow a small minority of bondholders, or a comparatively insignificant number of creditors, in the absence of even any pretense of fraud or unfairness, to defeat the wishes of the overwhelming majority of those associated with them in the benefits of their common security, provided the benefits of an equitable readjustment are extended to all classes of creditors or security holders in like manner.

The plaintiff contends that the provisions of the agreement providing that no suit or action shall be instituted in the event of default, unless the holders of at least 25 per cent. in amount of the notes outstanding shall have requested the trustee to take action, will prevent any suit being brought. It is apparent, of course, that the plaintiff has not complied and could not comply with this condition precedent, as not even a small fraction of 25 per cent. of the noteholders are represented here, and all others have assented to the plan of reorganization and distribution. It might be argued that plaintiff's contention only better illustrates the necessity or the force of the provision limiting the rights of noteholders to sue. The case of General Investment Co. v. Interborough Rapid Transit Co., 200 App. Div. 794, 193 N. Y. Supp. 903 (aff'd 235 N. Y. 133, 139 N. E. 216), in substance held that the restrictive provision there under consideration did not prevent a suit at law on the notes. But the Interborough notes, unlike the notes in the case at bar, were secured by a lien on the property held by the trustee under an indenture of trust. The restrictive provision of the note in the case cited merely limited the recourse of the noteholder against the security, but did not restrict or modify his right to sue at law.

In the instant case, the notes are not secured by any property, and the restrictive provision under consideration, by its terms, expressly deprives the noteholder of his right to proceed at law or in equity for the collection of the note. Its effect is to modify the remedy for its enforcement, and the parties to the contract—i. e., the noteholders—have accepted the notes with notice of the limitation. I am of the opinion that the trust agreement and the notes must be read together and must be given full effect. The plaintiff's right, of course, to share in the plan of distribution equally with others of the same class, must be preserved.

The plaintiff's motion for judgment will be denied, and the defendant's motion to dismiss the complaint will be granted.