HICKOK, Respondent, v. THE DIOCESE OF SIOUX FALLS, Appellant.

(259 N. W. 671.)

(File No. 7784.   Opinion filed March 23, 1935.)

*Tom Kirby,* of Sioux Falls, for Appellant.
*Bielski, Elliott & McQuillen,* of Sioux Falls, for Respondent.

WARREN, P. J.   The plaintiff as the owner and holder of a number of bonds issued by the defendant brought action to recover a money judgment thereon, in the sum of $2,926.20.   From the record it appears that the defendant, the Diocese of Sioux Falls,

a corporation, issued its serial bonds, which bonds were secured by a deed of trust conveying real property to a trustee for the purpose of securing the bonds. The bonds were due and unpaid, and after demand for payment thereof had been made plaintiff brought action against the defendant. The action is for a money judgment only; no relief in the way of foreclosure or otherwise is asked. The sole question before us is, Can the plaintiff maintain this action? Has the plaintiff the right to pursue his remedy upon the bonds for the purpose of recovering a money judgment against the defendant or must he confine himself to the relief provided for in the trust deed? At the conclusion of the trial the court found for the plaintiff. The defendant thereafter perfected its appeal to this court.

The appellant at the outset contends that the bonds and trust deed are one contract; that certain provisions in the trust deed by which the real property was conveyed must be observed, and that the language in the bonds is sufficient to apprise the purchasers thereof of the provisions in the trust deed and which said provisions therefore are binding upon those becoming owners of the bond. The provisions urged in the trust deed are as follow: " * * * If default shall be made in the prompt payment of any taxes, assessments, or other charges required by this indenture to be paid by the party of the first part, or in the prompt payment of any debt, lien or other charge required by this indenture to be paid by the party of the first part, and such default shall continue for a period of sixty (60) days after written notice thereof to the said The Diocese of Sioux Falls by the Trustees, or by the holders of not less than twenty-five (25) per cent in principal amount of the bonds hereby secured and then outstanding, specifying wherein such default consists; or * * * The Diocese of Sioux Falls by the Trustees, or by the holders of not less than twenty-five (25) per cent in principal amount of the bonds hereby secured and then outstanding specifying wherein such default consists; * * * The exclusive right of action hereunder shall be vested in said Trustees until refusal on their part to act, and no bondholder shall be entitled to enforce these *presents* in any proceeding in law, or in equity until after demand has been made upon the Trustees accompanied by tender of indemnity as aforesaid, and said Trustees have refused to act in accordance with such demand. Such Trustees

shall not be bound to recognize any person as a bondholder until his bond have been deposited with said Trustees and until his title thereto has been satisfactorily established." (Italics ours.)

The gold bonds issued by the appellant contained certain language by way of reference which is material in construing the intention and meaning of the parties to the transaction, and is as follows:

" * * * All of the bonds herein mentioned are equally in all things secured by the said mortgage deed of trust, without any preference or priority whatsoever of the lien thereof, in favor of any one or more of said bonds over any one or more of the others.

"It is still further agreed, that, if default be made in the payment of any of the said interest coupons, or of the said principal sum when and where the same shall become due, then interest at the rate of seven (7) per cent per annum shall be allowed on both principal and interest in default until the same are fully paid. *Said mortgage deed of trust and this bond are parts of the same contract and are to be construed together.*

"The undersigned reserves the right, as in said mortgage deed of trust provided to pay and redeem this bond on September 1, 1927, or on any interest paying date thereafter, by the payment of the face value hereof, and all accrued and unpaid interest hereon, and a premium of one (1) per cent of the principal hereof, and *giving notice as in said mortgage deed of trust provided.*" (Italics ours.)

The interest coupon also contains a reference to the trust deed, and is as follows: " * * * Being for an installment of interest on its first mortgage five and one half (5½) per cent serial gold bond. * * *"

█ It becomes necessary to determine the meaning of the language employed in the trust deed and gold bonds. The drafter of the bonds, in order to give specific notice that the bonds and trust deed were parts of the same contract, said: "Said mortgage deed of trust and this bond are parts of the same contract and are to be construed together."

A further fact was also mentioned in the bond that all the bonds were equally in all things secured by the mortgage deed of trust and that no preference or priority should be given in favor of any one or more of said bonds over any one or more of the

other bonds. The language in said bonds is sufficient to charge the purchasers with notice, and challenges their attention to the provision within the trust deed to the exclusive right of action thereunder.

The provision in the trust deed seems sufficient in language to compel the bondholders to proceed as in said trust deed directed. That is, that the action shall be vested in the trustees upon a certain percentage of the bondholders having requested the trustees to act both as to number and as to time and as enumerated in the portion that we have quoted above.

Courts differ as to this exclusive procedure. Respondent places much faith in certain South Dakota cases relating to the right of the owner and holder of the mortgage to sue upon the note and disregard the rights to enforce the security to the payment of the note. The line of authorities presented does not impress us as being applicable to the facts before us. The trust deed and bonds before us for consideration contain recitals which were not considered in the cited South Dakota authorities.

The question before us presents certain difficulties in view of the fact that there is a sharp split of authority. Some of the state courts hold that a reference in a bond to an indenture by which it is secured is insufficient to affect the holder with knowledge of the contents of the indenture. From an examination of those authorities we find them to be based upon somewhat different language than the language contained in both the bond and trust deed before us. The Michigan Law Review, No. 4 of vol. 33 (February, 1935) 604, contains a review of the authorities and discusses both lines and the soundness of each. It states its preference for the well-settled federal authorities and in its attempt to reconcile the authorities the following excerpt is highly illustrative: "For example, in an attempt to reconcile them it might be argued that the references are not alike, but a careful examination of the cases will reveal that often where the reference is full and complete, the state court will not charge the bondholder with notice; while, on the other hand, there are many cases in which the reference is indefinite and ambiguous, and still the federal court has refused to entertain the bondholder's suit. It would seem that the sounder rule is the one followed in the federal courts. The policy of not letting one disgruntled bondholder start trouble, when the

trustee and most of the bondholders see no reason for such action, ought to be sufficient reason for adopting this principle. The courts that go the other way are narrowing the idea of notice a bit too much just for the sake of preserving the negotiability of the bond."

The reference in the bond to the trust deed cannot be said to be ambiguous, nor is the reference indefinite. The language in the bond and in the trust deed seems, when measured by the rules adopted by other courts, to be sufficient to prohibit the respondent from bringing the present action. It seems to be the policy of the law to sustain the validity of such reasonable provisions when inserted in a mortgage deed or trust deed securing the issue of bonds which are designed to pass into the hands of separate, individual holders for the better security of all, and that such security should not be impaired by the conduct of one or a few stockholders. Such stipulations in a trust deed are not viewed as tending to oust the courts of jurisdiction in the premises, but rather as a wholesome restriction imposed for the better security of all the bondholders. The facts before us are strikingly similar to the facts in the case of McAdoo v. Oregon City Mfg. Co. (C. C. A.) 71 F. (2d) 879, at page 882. In determining the questions of notice to the holders and of the evident purpose of the incorporated provisions by reference in the agreement, the court said:

"The provisions incorporated in the trust agreement are not unusual, and to hold that they are inconsistent with or contradictory of the language of the notes would be to ignore the language of these instruments, wherein attention is directed to the provisions of the trust agreement. The holders of the notes were charged with notice of all the terms of the agreement. Crosthwaite v. Moline Plow Co. (D. C.) 298 F. 466. * * *

"The evident purpose of the agreement in the instant cases was to prevent any individual note holder from securing an advantage or preference over the others. A default could not be declared or suit instituted until the trustee had been requested to take action by a majority of the note holders. A unity of action and rights was intended, as under the agreement the trustee's declaration of default as to any single note accelerated the due date of all the notes.

"The notes issued were accepted with these reasonable restrictions upon the right of action by individual holders, and under such circumstances courts have held that a single note holder cannot proceed without the acquiescence of the other note holders as required by the agreement."

The Supreme Court of Washington, in Moody, Supervisor of Banking, v. Pacific S. S. Co. (1933) 174 Wash. 256, 24 P. (2d) 609, held that under the terms of bonds in a mortgage quite similar to the one before us the individual bondholder had no right to maintain an independent action at law on the bond, and further held that such provisions in a mortgage were not to be viewed as tending to oust jurisdiction of courts, but rather to afford benefit and protection to all bondholders. The following cases are in harmony with McAdoo v. Oregon City Mfg. Co., supra, and Moody, Supervisor of Banking, v. Pacific S. S. Co, supra: St. Louis-Carterville Coal Co. v. So. Coal & Mining Co., 194 Mo. App. 598, 186 S. W. 1152; Boley v. Lake St. Elevated R. R., 64 Ill. App. 305; State v. Comer, 176 Wash. 257, 28 P. (2d) 1027; Thayer v. South Side Foundry & Machine Works, 112 W. Va. 134, 163 S. E. 821; Craig v. Consolidated Cement Corp. (C. C. A.) 69 F. (2d) 613; Lidgerwood v. Hale & Kilburn (D. C.) 47 F. (2d) 318; Allan v. Moline Plow Co. (C. C. A.) 14 F. (2d) 912; Crosthwaite v. Moline Plow Co. (D. C.) 298 F. 466; McClure v. Twp of Oxford, 94 U. S. 429, 24 L. Ed. 129.

The term in the trust deed before us, which is as follows, "and no bondholder shall be entitled to enforce these *presents* in any proceeding in law" (italics ours), must be accorded as being as specific as the language in McAdoo v. Oregon City Mfg. Co., supra, which employs the language, "have no right to institute any suit or proceeding or take any action hereunder." The word "presents" (in law) according to Webster's International Dictionary is defined as "present letters or instrument, as a deed of conveyance, a lease, power of attorney, or other writing; as in 'Know all men by these presents,' that is, by the writing itself." Hence the expression is as strong as though the instrument contained the words "trust deed" instead of the words "these presents." It is apparent that courts have held that when there is a proper reference in the bond and trust deed the two must be considered and construed together as forming one contract. See 7 Fletcher Cyc. Corporation,

§§ 3157, 3158, and notes.  For further authority as to the policy and ·the reason for requiring bondholders to pursue the remedy under the trust deed and sufficiency of notice, see Belleville Savings Bank v. So. Coal & Mining Co., 173 Ill. App. 250, 253, and note 15 on page 607 of the February, 1935, Michigan Law Review.

We believe that the reference in the bond to the trust deed is sufficient to charge the holder with notice of the limitations upon his rights which are contained in said trust deed.  It seems sound to us that no bondholder of those holding just a fractional amount of the bonds should be allowed to impair the whole security by starting vexatious suits when other bondholders are satisfied to leave matters as they are.  The reading of the trust deed, we believe, clearly shows such an intention.  The wording of the bond and trust deed indicates an intention to have them contingent one upon the other, and the language therein contained is sufficient to warrant such a construction.  Having come to the foregoing conclusion, the respondent's cause of action is ordered dismissed.

The order and judgment appealed from are reversed, with directions to dismiss the action.

All the Judges concur.