Plaintiff was the owner and holder of two bonds issued by defendant corporation in May, 1909, maturing May 1, 1939, each in the principal sum of $500. Such bonds bore interest at 5 per cent. payable semi-annually, represented by coupons attached to the bond, which interest coupons in turn carried interest at 6 per cent. after maturity. In November, 1934, *Page 472 
twelve interest coupons attached to each bond in the amount of $12.50 each were unpaid and delinquent, and plaintiff instituted this action against defendant corporation in the county court of Pennington county, South Dakota, seeking a money judgment upon said coupons in the aggregate amount of $300 together with proper interest.
Defendant answered, admitting the execution and delivery of the bonds and interest coupons and plaintiff's ownership thereof, but alleging that said bonds and each of them were one of a series of fifteen hundred similar bonds issued under, and equally secured by, a deed of trust dated in May, 1909; alleging that said bonds and all thereof were subject to the provisions of said deed of trust; alleging the existence of certain provisions in said deed of trust (setting forth the same at length) which, according to defendant's contention, deprived plaintiff of any individual right to institute an action at law upon the bonds or interest coupons notwithstanding the fact that the same were past-due; and pleading, in substance, that plaintiff must first seek his remedy through the trustee named in said deed of trust and in concurrence with the holders of a majority in amount of outstanding bonds by said deed of trust secured.
To this answer plaintiff demurred upon the ground that it did not state facts sufficient to constitute a defense to his complaint. The demurrer was sustained, and from the order thereon defendant railroad company has appealed.
The situation is somewhat similar to that presented to this court in Hickok v. Diocese of Sioux Falls (1935) 63 S.D. 418,259 N.W. 671, upon which appellant much relies. Questions pertinent to this case are well stated as a preliminary to discussion in the article in 33 Mich. Law Rev. 604, cited in Judge Warren's opinion in the Hickok Case, in the following language: "Ever since corporate bonds made their appearance more than a century ago, there has been a steady increase in difficult problems relating thereto. Not the least interesting of these problems pertains to the matter of notice to holders of the bonds and other securities of the contents of the indenture under which they are generally issued. The question becomes acute when one of these bondholders starts suit in law or in equity, and is met by the proposition *Page 473 
that his right to so sue is limited by the trust indenture. There are two aspects to the matter, and it is proposed to take them up in order. First, how far is the bondholder charged with knowledge of the contents of the trust indenture? Second, admitting that he is charged with knowledge, is he bound by provisions which limit his right to sue?" See, also, 33 Mich. Law Rev. 1082 and 27 Columbia Law Rev. 443, 579.
[1] By the decision in the Hickok Case (from which we are not disposed, to recede), this court is committed to the view that the right of a bondholder to proceed individually, even upon his bond and interest coupons, may be limited and restricted by apt language in the trust indenture provided there is sufficient notice in the bond itself to charge a holder thereof with knowledge of the contents of the trust indenture.
[2] Thus to restrict the right of the bondholder to proceed at law upon the instrument which he owns is to make a distinct alteration in his normal and ordinary status as such legal owner. While we think, as held in the Hickok Case, that the rights of the bondholder may be thus restricted, we think equally that the intention to impose such restrictions should appear quite clearly and definitely from the terms of the two instruments. As stated by a commentator in 33 Mich. Law. Rev. 1082: "The draftsman of the bond and indenture must remember three things. First, he must be certain that the reference clause imports a limitation upon the holder's right to sue upon the bond as well as upon his right to foreclose in equity upon the indenture. Second, if he desires that the bonds be negotiable, he must not include such clauses as will destroy negotiability. Third, he must word the indenture so that it limits the bondholder's right to sue upon the bond, and also provisionally bars suit by him upon the indenture."
[3, 5] There appears to be no difficulty in the instant case concerning the first requirement of sufficient notice in the bond that rights of action thereon may be limited by the terms of the trust indenture. The bond on its face recites that it is one of a series of fifteen hundred similar bonds, "* * * all equally secured by a mortgage and deed of trust * * * to all the provisions of which this bond and the rights of the holders thereof are subject, and to which by the receipt hereof the holder or owner hereof assents. *Page 474 
All rights of action on this bond are subject to the provisions of said mortgage or deed of trust." Our difficulty is in relation to the third point, to-wit the sufficiency of the indenture provisions to limit the bondholder's right to sue upon his bond. We are of the opinion that such limitation must appear either by the express words of the indenture or by necessary implication from its plain language and ought not to rest upon speculation or conjecture. We concede the validity of such limitation, but we think it ought to be put in the trust indenture by the draftsman thereof rather than by judicial interpretation. As stated by another commentator (27 Columbia Law Rev. 579 at 581): "* * * the safest mode of accomplishing these purposes would seem to be by including in the indenture an express negative provision, depriving the bondholder of the right to sue on the primary obligation, to overcome the presumption of legal ownership of the primary chose, created by the possession of the evidence of that chose — the bond, by the bondholder." Turning to the provisions of the trust indenture in the instant case, appellant railroad company relies upon the provisions of article 6 thereof. This article is lengthy and various portions of it confer broad powers upon the trustee to declare defaults, enter, take possesion, sell, proceed at law or in equity, etc., most of which powers are vested in the trustee with provision that he may exercise the same in his discretion and shall exercise them upon written request of the holders of the majority of the outstanding bonds. So far as concerns any express limitation upon the rights of bondholders, we find nothing more than is set forth in section 7 of article 6 as follows: "No holder of any bond or coupon hereby secured shall have any right to institute any suit, action or proceeding for the foreclosure of this Indenture, or for the execution of any trust hereof without first giving to the Trustee written notice of the fact that default has occurred and continued as hereinbefore provided, nor unless also the holders of a majority in amount of the then outstanding bonds hereby secured shall have requested the Trustee in writing, and shall have afforded to it reasonable opportunity either itself to proceed to exercise the powers hereinbefore granted or to institute such action, suit or proceeding in its own name, and the Trustee shall have neglected or refused so to do, nor unless also they shall have offered to the *Page 475 
Trustee security and indemnity satisfactory to itself, against the cost, expense and liabilities to be incurred therein and thereby."
[6] As we read this instrument, we believe that the above-quoted language refers to a suit, action, or proceeding for the foreclosure of the trust indenture or for the execution of any trust thereof, and we are not able to see that such language limits, either expressly or by any necessary implication, the right of the bondholder to sue at law upon his debt. We are confirmed in this view by the language of section 6 of article 6, which provides in part as follows: "Except as herein expressly provided to the contrary, no remedy herein conferred upon or reserved to the Trustee or to the holders of bonds hereby secured, is intended to be exclusive of any other remedy, but every remedy herein provided shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute, and every power and remedy given by this Indenture to the Trustee or to the bondholders may be exercised from time to time and as often as may be deemed expedient. No delay or omission of the Trustee or of any holder of bonds hereby secured, to exercise any right or power arising from any default, shall impair any such right or power, or shall be considered as a waiver of any such default or any acquiescence thereunder, nor shall the action of the Trustee or of the bondholders in case of any default, or of any default and the subsequent waiver of such default affect or impair the rights of the Trustee or of such holders in respect of any subsequent default, or impair any right resulting therefrom."
We are of the opinion that the instant case is distinguishable upon the facts from the Hickok Case in this: That there is no language in the trust indenture here concerned which expressly or by fair implication abrogates or restricts the right of the bondholder, normally arising from his legal ownership of the bond, to sue at law upon the bond or interest coupons when default has occurred. If such limitation is intended, the trust indenture should exhibit the intention plainly, and here we think it does not.
We think, therefore, that the learned trial judge ruled correctly upon the demurrer, and the order appealed from should be, and it is, affirmed.
All the Judges concur. *Page 476