ANTON F. MUNCH, APPELLEE, v. CENTRAL WEST PUBLIC SERVICE COMPANY, APPELLANT.

FILED MARCH 29, 1935. No. 29217.

*Crofoot, Fraser, Connolly & Stryker*, for appellant.

*Rosewater, Mecham, Shackelford & Stoehr*, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

CARTER, J.

These are two actions at law to recover judgments on the principal and interest of two $500 bonds issued by the

Central West Public Service Company, one of which was owned by Anton F. Munch, and the other by Paul F. Munch. The cases were consolidated, a jury waived, and tried to the court on a stipulation of facts. Judgments were entered in favor of both appellees and against the appellant, Central West Public Service Company. From an order overruling its motions for a new trial, the appellant brings both cases here on appeal.

These actions were commenced on each of said bonds on April 5, 1933, more than eight months before their maturity date but after defaults had been made in the payment of interest. The question to be determined is whether the maturity date of the bonds can be accelerated by the appellees under the provisions of the bond. If it can be so accelerated, the judgments of the trial court are right; if not, the actions were prematurely brought.

The bonds contain the following provision: "In case of certain events of default specified in the mortgage, the principal of this bond may be declared or may become due and payable in the manner and with the effect provided in the mortgage." By this statement in the bonds, the provisions of the mortgage given to secure the bonds regarding the acceleration of their maturity date is incorporated by reference as a part of the bonds. That the holder of a bond is bound by the provisions of the mortgage under such circumstances is well established by the authorities. In the case of *Pennsylvania Steel Co. v. New York City R. Co.*, 189 Fed. 661, it was held: "A reference in bonds issued by a corporation to the mortgage securing the same puts the bondholders and their trustees on notice as to the terms of the mortgage." Also, in the case of *Crosthwaite v. Moline Plow Co.*, 298 Fed. 466, the court said: "Holders of corporation's notes, referring to trust agreement and stating that the notes were issued thereunder, were charged with notice of all the terms of the agreement." This court has adopted the same view. In *Grand Island Savings & Loan Ass'n v. Moore*, 40 Neb. 686, this court said: "A note and a mortgage securing it, made contemporaneously, are

to be construed together. Therefore, where a note is payable on or before a date named and the mortgage contains a provision that in certain contingencies, prior to that date, the mortgagee may elect to declare the whole amount due, *held*, that such provision in the mortgage authorizes the mortgagee upon the happening of such contingencies to proceed not only to foreclose the mortgage but also to enforce the personal liability upon the note." See, also, *Consterdine v. Moore,* 65 Neb. 296, on rehearing. The parties to the transaction, under the conditions herein set forth, are bound by the provisions of the mortgage in determining their rights in a suit at law on the bond.

The right to declare the whole debt due because of a default in the payment of interest arises only by the terms of the contract. That this is a correct statement of the law there can be no dispute. The question is: Did the contract provide that the holder of a bond could accelerate the maturity date of the bond because of a default in the payment of interest? The terms of the mortgage must necessarily be examined to determine this question.

By the terms of the trust deed securing the bonds, it is provided that if default is made in the payment of interest, which continues for a period of 90 days, the trustees, in their discretion, may and, upon the written request of the holders of 25 per cent. of the principal amount of the bond, shall take possession of the property secured by the mortgage and operate the same; that the trustees may accelerate the maturity of the principal amount in case of default, and shall do so upon the request of 25 per cent. of the bondholders.

Section 14, art. XI of the mortgage, then provides: "No holder of any bond shall have the right to institute any suit, action or proceeding at law or in equity upon, or in respect of, this mortgage, or for the execution of any trust or power hereof, or for any other remedy under or upon this mortgage, unless such holder shall previously have given to the trustees written notice of an existing default; nor unless, also, such holder or holders shall

have tendered to the trustees security and indemnity satisfactory to them against all costs, expenses and liabilities which might be incurred in or by reason of such action, suit or proceeding; nor unless, also, the holders of at least twenty-five per cent. in aggregate principal amount of all the bonds then outstanding shall have requested the trustees in writing to take action in respect of such default and the trustees shall have declined to take such action or shall have failed so to do within thirty days thereafter; it being understood and intended that no holder of any bond or interest coupon shall have any right in any manner whatever to affect, disturb or prejudice the lien of this mortgage by his action, or to enforce any right hereunder, except in the manner herein provided, and that all proceedings hereunder shall be instituted, had and maintained in the manner herein provided and for the equal benefit of all holders of outstanding bonds."

Section 4, art. XI of the mortgage, also provides in part: "In case the company shall make default in any of the respects specified in section 1 of this article, and such default shall continue for the period, if any, therein specified, the trustees may and, upon the written request of the holders of at least twenty-five per cent. in aggregate principal amount of all the bonds then outstanding, regardless of series or maturity, shall, by notice in writing mailed or delivered to the company, declare the principal of all the bonds then outstanding to be due and payable immediately; and upon any such declaration the same shall become and be immediately due and payable, anything in this mortgage or in said bonds contained to the contrary notwithstanding."

It is clear from an examination of these sections of the mortgage that the trustees are permitted to accelerate the mortgage in case of a default, and, in case of written request of the holders of 25 per cent. of the aggregate principal amount of the bonds outstanding, the trustees must do so within 30 days, and upon failure to so do the holder of the bond may then commence his action. It is

not disputed that the trustees have never accelerated the maturity date of the bonds sued upon, nor have the requisite number of bondholders ever requested the trustees to accelerate the principal. Neither have they tendered to the trustees security and indemnity against costs, expenses and liabilities which might be incurred by reason of the commencement of this suit, as required by the mortgage. Under the provisions of the mortgage above set forth, the appellees can claim no right to accelerate the principal. Are the provisions binding? We hold that they are. In the case of *Central West Public Service Co. v. Craig*, 70 Fed. (2d) 427, the court, in discussing this provision of the identical mortgage involved in this suit, said: "This provision is binding on the plaintiffs."

In the case of *Seibert v. Minneapolis & St. L. R. Co.*, 52 Minn. 148, the court, in considering a like case, said: "The principal question involved in this appeal, therefore, is whether the provisions of article nine above quoted, restraining proceedings for foreclosure on the part of individual bondholders until after the requisition made upon the trustee by a certain proportion of the bondholders as therein provided, and a refusal by him to comply therewith, is valid and obligatory upon the individual bondholders as respects the enforcement of the security. * * * They are to be treated as *stricti juris,* but nevertheless are to be reasonably construed in view of the nature of the mortgage, which is the common security for all the bondholders, and the purposes to be subserved in making them. There is no doubt that the parties could lawfully provide in the same instrument for a reasonable extension of the time for the commencement of foreclosure proceedings, to be determined at the option of a majority of the bondholders. * * * Why may not the mortgage in the common interest stipulate the conditions under which this right may be exercised by the bondholders, and, in order to avoid the risk of rash or arbitrary proceedings which might result in great injury to the security, provide that no such proceedings

should be instituted by an individual bondholder except upon the refusal of the trustee to obey the requisition of a reasonable number of bondholders? It is not the intention or effect of such conditions or stipulations to divest the bondholders of their right to judicial remedies, or to oust the courts of their jurisdiction; it is merely the imposition of certain conditions upon themselves in respect to the exercise of that right. And this distinction is well recognized by the courts. *Gasser v. Sun Fire Office*, 42 Minn. 315, and cases; *Guilford v. Minneapolis, S. Ste. M. & A. Ry. Co.*, 48 Minn. 560. The provisions of this mortgage are not, we think, unreasonable or invalid."

Also, in the case of *Allan v. Moline Plow Co.*, 14 Fed. (2d) 912, the court said: "The limitations in the trust agreement on the right of note holders to sue are not inconsistent with the promise of the Illinois company to pay. They do not prohibit action against the Illinois company for the enforcement of the notes, but they protect against action by less than 25 per cent. of the note holders which the other note holders believe would be disadvantageous to the note holders as a class. These provisions were not written into the trust agreement for the benefit and protection of the Illinois company, but for the benefit and protection of the note holders. They, in effect, provide that, if the Illinois company shall fail to pay the notes, not less than 25 per cent. in amount of the note holders shall determine upon a course of action which will best subserve the interest of the note holders as a class. These provisions, therefore, do not in any wise limit the liability of the Illinois company to pay, but they restrict the method of enforcing payment in the event of default." See, also, *Batchelder v. Council Grove Water Co.*, 131 N. Y. 42.

Under the terms of the sections of the mortgage hereinbefore quoted, the trustee, upon a default in the payment of interest could, if he elected to do so, accelerate the maturity date of this mortgage. But this he has

failed to do. Also, upon the written request of the holders of 25 per cent. of the aggregate amount of the bonds, the trustee must accelerate all of the bonds, and, on refusal to do so, the individual bondholder can take action. The required number of bondholders have not made such a request. Before commencing suit in any event, the bondholder must furnish security for costs and expenses, and this has not been done. Under such circumstances, the bondholder cannot accelerate the maturity date of the bond and his right to sue thereon has not accrued.

Appellees rely upon section 13, art. XI of the mortgage, which provides in part as follows: "Except as herein expressly provided to the contrary, no remedy herein conferred upon or reserved to the trustees or to the holders of the bonds is intended to be exclusive of any other remedy, but every remedy herein provided shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity, or by statute; and every power and remedy given by this mortgage to the trustees or to holders of the bonds may be exercised from time to time, and as often as may be deemed expedient. No delay or omission by the trustees or by any holder of any bond to exercise any right or power arising from any default, shall impair any such right or power, or shall be construed to be a waiver of any default or an acquiescence therein." It is the contention of appellees that their right to sue at law on their own bonds is an inherent right, which, if it could be taken away at all, could only be taken away by express and unequivocal language either in the bonds or in the mortgage, and that such right to sue at law is preserved in the section of the mortgage just quoted. It will be noted that this section states, "except as herein expressly provided to the contrary," which clearly indicates that some restrictions were contemplated, at least, on the right to sue. Section 14, art. XI of the mortgage, clearly says that "no holder

of any bond shall have the right to institute any suit, action or proceeding at law or in equity" unless conditions precedent are complied with. This section also says: "It being understood and intended that no holder of any bond or interest coupon shall have any right in any manner whatever to affect, disturb or prejudice the lien of this mortgage by his action, or to enforce any right hereunder, except in the manner herein provided." That this is express and unequivocal language restricting the right of a bondholder to bring suit on a single bond cannot be successfully refuted. That suits at law on bonds by individual bondholders, or even by one bondholder, would affect, disturb or prejudice the lien of the mortgage is quite apparent from the nature of the whole transaction. We conclude that section 13, art. XI of the mortgage, can have no application to the cases at bar in view of the valid restrictions against suits of this kind contained in other parts of the mortgage indenture.

In discussing a like proposition, the court in the case of *Home Mortgage Co. v. Ramsey,* 49 Fed. (2d) 738, said: "Moreover, we think that the plaintiff is precluded from maintaining this suit by the terms of her bonds and the indenture securing them which provide in substance that action can be taken for the protection of the interest of the bondholders only where a certain number of the bondholders join. These provisions have already been quoted. The plaintiff argues that these provisions are void because it is an attempt to oust the jurisdiction of the courts. We do not so regard them. Under the terms of the bonds and indenture, the trustee is the representative of the plaintiff, and entitled to bring suit. The provisions are merely reasonable conditions precedent to the right of the plaintiff to bring the suit herself. They are intended for the security of all the bondholders, and no doubt rendered the bonds more salable. They were devised for just such a case as is presented here, where one bondholder, or a small minority, is determined upon action which a large majority believe

hostile to their interests. The limitations imposed by the contract have not been met in this case. The plaintiff has not only not complied with the provision, but has made no demand whatever upon the trustee to take action, nor is there any showing that, if such demand had been made, it would be futile. If it were shown that the trustee had colluded with the majority of the bondholders, or was engaged with the Home Mortgage Company in perpetrating a fraud upon the plaintiff, and that the other bondholders would not join with her in protecting their rights, a different situation would be presented; but there is no such showing. The plaintiff as against the corporation is seeking to enforce rights which the trustee is the proper person to enforce. She has made no demand upon the trustee to safeguard these rights, and has not secured the cooperation of the bondholders required by the provisions of the indenture." The reasoning and logic contained in this quotation are particularly applicable to the cases at bar.

We hold that the maturity date of the bonds in suit could not be accelerated by appellees except upon the happening of the conditions precedent contained in the mortgage, that said conditions had not been complied with by appellees at the time the suits at bar were commenced, that the conditions precedent to a suit at law were reasonable and enforceable, and that the suits were therefore prematurely brought.

For the reasons herein set out, the judgment of the district court in each case is reversed and the actions dismissed.

REVERSED AND DISMISSED.