## BLOCK v. MANSFELD MINING & SMELTING CO.

No. 7299.

District Court, E. D. New York.
March 22, 1938.

Evans & Rees, of New York City (Donald I. Peyser, of New York City, of counsel), for plaintiff.

Cravath, de Gersdorff, Swaine & Wood, of New York City (Hugh A. Fulton, of New York City, of counsel), for defendant.

MOSCOWITZ, District Judge.

These are two motions, one by the plaintiff for an order striking out the answer to the amended complaint and praying for summary judgment, and the other by the defendant for an order dismissing that portion of the amended complaint which seeks to recover the principal amount of the bonds and directing that partial summary judgment be entered in favor of the defendant.

It appears from the complaint that plaintiff claims to be the owner of five bearer coupon bonds issued by the defendant which were made payable May 1, 1941. Plaintiff seeks to recover the amount of such bonds together with interest at the rate of 7% per annum from November 1, 1931 to August 20, 1936. The bond to which reference is made in the complaint is as follows:

"No. ———— $1,000.
"Mansfeld Mining and Smelting Company
(Mansfeld Aktiengesellschaft fur
Bergbau und Huttenbetrieb)
Germany
"Fifteen-Year 7% (closed) Mortgage
Sinking Fund Gold Bond

"Mansfeld Aktiengesellschaft fur Bergbau und Huttenbetrieb (Mansfeld Mining and Smelting Company), a corporation organized and existing under the laws of Germany (hereinafter called the 'Company', which term shall include any successor company or corporation as defined in the Indenture hereinafter referred to), for value received, hereby promises to pay to the bearer hereof or, if this Bond be registered, to the registered owner hereof, on the first day of May, 1941 (unless before said date this Bond shall have been duly redeemed), at the principal office of Brown Brothers & Co., or their successors, as Fiscal Agents, in the Borough of Manhattan, City and State of New York, United States of America, the sum of One thousand Dollars ($1,000), in gold coin of the United States of America, of or equal to the standard of weight and fineness existing

702

May 1, 1926, and to pay interest thereon from May 1, 1926, at the rate of seven per cent. (7%) per annum, in likegold coin, payable at said office, semi-annually on the first day of May and the first day of November in each year until the principal hereof be paid, but only according to the tenor and upon presentation and surrender of the respective coupons therefor, hereto annexed, as they severally mature.

"Principal and interest, as above specified, shall be paid without deduction or withholding for any past, present or future taxes or charges of any nature of or in Germany or of any state, municipality or other taxing authority thereof or therein. Upon certain conditions and contingencies specified in the Indenture hereinafter mentioned, the rate of interest and the amount of principal which the Company is obligated to pay and which the holder hereof is entitled to be paid, will be increased over the above stated rate and amount to the end that the net sums receivable by the holder hereof by way of principal and interest after deductions or withholdings for certain taxes or charges referred to in such Indenture shall be at the above stated rate and in the above stated amount.

"This Bond is one of a duly authorized issue of coupon bonds of the Company, known as its Fifteen–Year 7% (closed) Mortgage Sinking Fund Gold Bonds, limited to the aggregate principal amount of Three million Dollars ($3,000,000), all issued and to be issued under and pursuant to an Indenture (herein called the 'Indenture'), dated May 1, 1926, executed between the Company and its subsidiaries, Mansfeldsche Kaliwerke Aktiengesellschaft (Mansfeld Potash Company), Gewerkschaft Konsolidiertes Stolbergaches Kupferschieferbergwerk bei Stolberg am Harz (Stolberg Consolidated Copper Mining Company) and Mansfelscher Metallhandel Aktiengesellschaft (Mansfeld Metal Sales Company), and Allgemeine Deutsche Credit-Anstalt, as Trustee, and The New York Trust Company, as Co-Trustee, and all equally secured and to be secured by a Mortgage executed by the Company and the said subsidiaries in favor of Allgemeine Deutsche Credit-Anstalt, as Trustee. Reference is hereby made to the Indenture and all supplements thereto and to said Mortgage and all supplements thereto, for a description of the property mortgaged, the nature and extent of the security, the rights of the holders of the Bonds with respect thereto and the terms and conditions under which the Bonds are issued and secured.

"The Bonds of this issue are subject to redemption as a whole at the option of the Company, or from time to time in part by lot, either at the option of the Company, or through operation of the Sinking Fund hereinafter mentioned, on (but not prior to) May 1, 1931, or on any interest payment date thereafter, at One Hundred two and one-half per cent. (102½%) of the principal amount thereof if redeemed prior to May 1, 1933; at One hundred and two per cent. (102%) of the principal amount thereof if redeemed on or after May 1, 1933 and prior to May 1, 1935; at One Hundred one and one-half per cent. (101½%) of the principal amount thereof if redeemed on or after May 1, 1935 and prior to May 1, 1937; at One hundred and one-half per cent. (100½%) of the principal amount thereof if redeemed on or after May 1, 1939 and prior to the date of maturity expressed herein; together, in each case, with interest accrued to the date fixed for redemption; upon notice published once a week for six successive weeks in one daily newspaper of general circulation published, in the English language, in the Borough of Manhattan, City of New York (the first publication to be not less than forty-two days nor more than fifty days before the redemption date), on the conditions and in the manner provided in the Indenture.

"The Company is required, on the conditions and in the manner set forth in and subject to the terms of the Indenture, to provide Brown Brothers & Co., or their successors, as Fiscal Agents for the service of the Bonds of this issue, with a Market Purchase Fund in the amount of $103,500 annually for five years, commencing May 1, 1927, applicable to the purchase of Bonds, if and to the extent that Bonds are obtainable at or below the principal thereof and accrued interest, and thereafter to pay to the said Fiscal Agents as and for a Sinking Fund, sums calculated as sufficient to provide, by annual purchase or redemption, commencing May 1, 1932, for the retirement of all of the remaining Bonds of this issue by maturity. In lieu of making cash payments as aforesaid to the Fiscal Agents, the Company may, as in the Indenture provided, deliver to the Fiscal Agents Bonds of this issue for cancellation.

"In case an event of default as defined in the Indenture shall occur, this Bond

may become or be declared due and payable at One hundred two and one-half per cent. (102%) of the principal amount hereof together with the interest accrued hereon, in the manner and with the effect provided in the Indenture.

"This Bond shall pass by delivery unless registered as to principal in the owner's name on the books of the Company at the principal office of the Co-Trustee in the Borough of Manhattan, City of New York, such registration being noted hereon, after which no valid transfer hereof can be made except on said books until after registered transfer to bearer. But after such registered transfer to bearer this Bond shall again be transferable by delivery and shall be subject to successive registrations and transfers to bearer as before. Such registration shall not affect the negotiability of the interest coupons annexed hereto, which shall continue to be payable to bearer and transferable by delivery.

"No recourse shall be had for the payment of the principal of or interest on this Bond against any past, present or future stockholder, officer or director, as such, of the Company or of any successor company or corporation, under any statute or by the enforcement of any assessment or otherwise, all such liabilities of stockholders, officers and directors being released by the holder hereof by the acceptance of this Bond, and being likewise waived and released by the terms of the Indenture.

"Neither this Bond, nor any of the coupons for interest hereon, shall be entitled to any benefit under the Indenture or the Mortgage, or become valid or obligatory for any purpose, until The New York Trust Company, the Co-Trustee under the Indenture, or a successor co-trustee thereunder, shall have signed the form of certificate endorsed thereon.

"In witness whereof, the Company has caused this Bond to be executed in its name either by two of its Managing Directors· or by its duly authorized agent or attorney-in-fact, and interest coupons bearing the facsimile signatures of two of its Managing Directors to be attached hereto, all as of the first day of May, 1926.

"Mansfeld Aktiengesellschaft Fur Bergbau Und Huttenbetrieb

"By ————

"Managing Directors, "Attorney-in-fact."

The material portion of the Indenture to which the bond refers is as follows:

"No holder of any Bond issued hereunder shall have any right to institute any suit, action or proceeding of any kind for the foreclosure of the Mortgage or for any remedy under or upon this Indenture, or under or upon the Mortgage (but nothing herein shall be construed to impair or limit any remedy the holder of any Warrant may have, or to which he may become entitled, to enforce his rights pursuant to the terms of his Warrant and of Article VII of this Indenture), unless and until such holder previously shall have given to the Trustee or the Co-Trustee written notice of an event of default and of the continuance thereof, as hereinbefore provided, and also unless or until fifteen per cent. (15%) of the Bondholders shall have made written request upon the Trustee or the Co-Trustee after the happening of one or more events of default hereinbefore in Section 1 of this Article VIII specified, and shall have afforded to the Trustee or the Co-Trustee a reasonable opportunity to institute such action, suit or proceeding in its own name, and unless also they shall have offered to the Trustee or to the Co-Trustee security and indemnity satisfactory to it, against the costs, expenses and liabilities to be incurred therein or thereby and the Trustee or the Co-Trustee for sixty days after receipt of such notice, request and offer of indemnity shall have neglected or refused to institute any such action, suit or proceeding; and such notification, request and offer of indemnity are hereby declared in every such case at the option of the Trustee or the Co-Trustee, as the case may be, to be conditions precedent to the execution of the powers of this Indenture, and to any action or cause of action or to any remedy hereunder; provided, however, 'that nothing herein or in the said Bonds contained shall affect or impair the right, which is unconditional and absolute, of the holder of any Bond to enforce payment thereof at or after the date of maturity in said Bond expressed, or the obligation of the Company which is also unconditional and absolute, to pay the principal and interest of the Bonds to the respective holders thereof at the respective times and places therein and in the appurtenant coupons expressed; it being understood and intended and being expressly covenanted by the taker and holder of every Bond issued hereunder and the trustee and the Co-Trustee, that no one or more holders of Bonds

and coupons shall have any right in any manner whatever to affect, disturb or prejudice the rights of the holders of any other of such Bonds and coupons with respect to the security therefor, or in any manner or way shall obtain or seek to obtain priority over or preference to any other such holder with respect thereto, or to enforce any right hereunder, except in the manner herein provided, and for the benefit of all holders of such outstanding Bonds and coupons. For the protection and enforcement of the terms of this Section 9, each and every Bondholder and the Trustee and Co-Trustee shall be entitled to such relief as can be given at law or in equity." (Article VIII, Section 9.)

The Indenture contains a provision for a Market Purchase Fund and a Sinking Fund for the purpose of redeeming and retiring the bonds issued pursuant thereto. The defendant was obligated to make payments to the Sinking Fund for $315,000 and $313,500 on February 1, 1936 and February 1, 1937, respectively, but failed to make such payments. Had such payments been made they would have been ample to redeem and retire all outstanding bonds.

The bonds and coupons were issued by the defendant pursuant to the Indenture dated May 1, 1926 between the defendant and The New York Trust Company, as Co-Trustee. The New York Trust Company, as Co-Trustee, has obtained a judgment against the defendant for $632,109.60 representing the Sinking Fund defaults of $628,500 less $49,500. It therefore appears that the judgment represents the principal amount of the bonds involved in this action.

A motion was made before Judge Inch to dismiss the original complaint. Judge Inch filed the following memorandum dated February 23, 1937, " * * * must also contain allegations that defendant has failed to comply with the provisions of the indenture which apparently control the operation of the sinking fund." The decision of Judge Inch constitutes the law of this case. He held in effect that the Sinking Fund obligation was created by the Indenture and that the plaintiff's complaint be dismissed unless she can allege compliance with the conditions contained in the Indenture. While the decision of Judge Inch stands, and I express no disagreement with it, a Judge of co-ordinate jurisdiction should follow his decision. Commercial

Union of America, Inc. v. Anglo-South American Bank, 2 Cir., 10 F.2d 937.

The terms of the bond and Indenture must be construed together. By the terms thereof the bonds are not due until May 1, 1941. There is no provision in the bond requiring the maintenance of a Sinking Fund. Construing the bonds and the Indenture there is no provision permitting a recovery for the full amount of the bonds. Assuming the position of the plaintiff that there was an obligation to create a sinking fund, a default in the performance of such sinking fund payments would not cause the whole amount of the bonds to become due. In any event there is no remedy in the plaintiff in the event of default until the provisions of the Indenture, Article VIII, Section 9, supra, have been complied with. The remedy upon any default in the sinking fund payments is not with the plaintiff, but is given to the Co-Trustee.

Article VIII, Section 9, supra, provides that no holder of any bond shall have any right of action or remedy upon the Indenture unless and until he shall have given written notice to the Trustee or Co-Trustee of an event of default and the continuance thereof, and also unless and until 15% of the bondholders shall have made written request upon the Trustee or the Co-Trustee after the events of default and shall have afforded the Trustee or the Co-Trustee a reasonable opportunity to institute an action, suit or proceeding in its own name, and unless also they shall have offered to the Trustee or the Co-Trustee security and indemnity satisfactory to it against the costs, expenses and liabilities to be incurred therein and the Trustee or Co-Trustee shall have sixty days after receipt of such request and offer of indemnity within which to commence an action, suit or proceeding. Such requests and offer of indemnity are conditions precedent to the execution of the powers of the Indenture and to any action or remedy on the part of the bondholders.

There is no allegation in the complaint that any of the bondholders requested any action or called attention to the Trustee or Co-Trustee of any default or requested any action to be brought upon any default. There is no allegation in the complaint that any indemnity was tendered to the Trustee or the Co-Trustee as is required by the Indenture. To permit the plaintiff to sue under the circumstances herein disclosed would create a preference

in her favor over other bondholders. Certainly that is not intended in the bonds and the Indenture in suit. Batchelder v. Council Grove Water Company, 131 N.Y. 42, 29 N.E. 801; Watson v. Chicago, Rock Island & Pacific R. Co., 169 App.Div. 663, 155 N.Y.S. 808, 1st Dept.; Munch v. Central West Public Service Co., 128 Neb. 645, 259 N.W. 736; Craig v. Consolidated Cement Corporation, 10 Cir., 69 F.2d 613; Lidgerwood v. Hale & Kilburn Corporation, D.C.S.D.N.Y., 47 F.2d 318; Crosthwaite v. Moline Plow Co., D.C., 298 F. 466; Allan v. Moline Plow Co., Inc., 8 Cir., 14 F.2d 912, and McAdoo v. Oregon City Mfg. Co., 9 Cir., 71 F.2d 879.

Plaintiff's motion for judgment is denied.

Defendant's cross-motion for a partial summary judgment to dismiss that part of the complaint in which it seeks to recover the principal amount of the bonds is granted.

Settle orders on notice.