HENRY GREENWALD, APPELLANT, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLEE: W. DALE CLARK ET AL., INTERVENERS, APPELLEES.

280 N. W. 884.

FILED JULY 1, 1938. No. 30322.

*Manhart & Buckley, Albert Harris* and *Marcus Miller,* for appellant.

*Kennedy, Holland, De Lacy & Svoboda,* contra.

Heard before GOSS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

ROSE, J.

This is an action at law on each of ten unpaid 1,000-dollar bonds of which Henry Greenwald, plaintiff, is the holder. They were issued by the Omaha & Council Bluffs Street Railway Company, defendant, December 1, 1902, and were payable in the state of New York January 1, 1928. Plaintiff purchased the bonds late in 1936. In the meantime, by three extensions, the time of payment was extended to January 1, 1937, the date of alleged maturity. The petition was filed March 3, 1937, and it is therein stated that the bonds are negotiable instruments payable

to bearer and that plaintiff is a *bona fide* purchaser thereof for value before maturity without notice of defects or of other defenses. It is further pleaded that plaintiff elects to proceed at law without regard to the mortgage by which the bonds were secured, no other action to collect the debt having been instituted.

Execution of the bonds by defendant is admitted in its answer which denies that they are negotiable or · due; pleads in substance that the time fixed for payment was extended from January 1, 1937, until January 1, 1947; sets out in full as connected transactions the mortgage, the bonds and the extension agreements; states that the bonds by reference to the mortgage gave plaintiff notice of contingencies showing the bonds are not negotiable instruments.

The reply to the answer contains a general denial.

A jury was waived and the cause tried to the district court, where the findings on the controverted issues were in favor of defendant. From a dismissal of the action plaintiff appealed.

The vital issue on appeal is the traversed allegation that the bonds are negotiable. The negotiable instruments act provides:

"An instrument to be negotiable must conform to the following requirements: First. It must be in writing and signed by the maker or drawer; Second. Must contain an unconditional promise or order to pay a sum certain in money; Third. Must be payable on demand, or at a fixed or determined future time; Fourth. Must be payable to order or to bearer." Comp. St. 1929, sec. 62-101.

That is not all the law of negotiable instruments. The statute provides:

"An instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect." Comp. St. 1929, sec. 62-104.

Plaintiff relies on the facts that each bond is in writing and signed by defendant; that its execution and delivery are admitted; that it contains an unconditional promise to

pay a sum certain in money—$1,000; that it is payable at a fixed time—January 1, 1937; that it is payable to bearer—plaintiff; that plaintiff confines his remedy to an action at law regardless of the mortgage; that he is a purchaser in good faith before maturity; that under the pleadings, the evidence and the law the district court had no alternative but to enter judgment in his favor on the bonds for the principal and interest. It is argued that the bonds are payable to bearer and that the defense of non-negotiability and the attempt to defeat recovery by resort to the mortgage are tainted with fraud. The argument, statutes and cases cited to support these and other propositions of plaintiff have not been overlooked. There is, however, another view of the case that requires consideration.

Plaintiff bought the bonds in 1936 before the alleged date of maturity January 1, 1937. Except for the three extensions authorized by the terms of the mortgage, the bonds would have shown on their face that they matured January 1, 1928, long before plaintiff purchased them. He resorted to the mortgage through the extensions to show that he bought the bonds before they were due and ignored the consequences of a contingency arising from a default in payment, a subject treated by the mortgage in direct terms. Each bond on its face referred the holder and bearer to the mortgage in the following words:

"In case of default in the payment of this bond, or of the interest accruing thereon, or otherwise, such consequences shall ensue as are provided in the mortgage securing the payment of the same hereinafter mentioned."

Consequences of defaults in payments were called to the attention of bondholders in the following terms of the mortgage:

"Every holder of the bonds secured hereby accepts the same subject to the express understanding and agreement that every right of action, whether at law or in equity, upon or under this instrument, is vested exclusively in the trustee; and under no circumstances shall the holder of any bond or coupon, or any number of such holders, have any

'right to institute any action at law upon any coupon or coupons, or otherwise, or any suit or proceedings in equity, or otherwise, for the purpose of enforcing any payment, covenant or remedy herein or in said bonds or coupons contained, or to foreclose this mortgage, except in case of refusal on the part of the trustee to perform any duty imposed on it by this instrument in respect of such payment, covenant, remedy or foreclosure after the expiration of three months after demand by the holder or holders of twenty-five per cent. in amount of the bonds secured by this mortgage and then outstanding and the production of such bonds by the holders thereof to the trustee, or the furnishing by such holders of other evidence satisfactory to the trustee that they are such holders, and the giving to the trustee of an indemnity satisfactory to it, securing it against liability by reason of the action requested, but no inaction by said trustee upon any such request shall be deemed a refusal until after the expiration of said three months for the consideration thereof by said trustee.

"In every case in which the trustee is authorized or required, under any provision of this instrument, to take any action upon the request of the holders of said bonds, the trustee shall have the right to require the person or persons presenting such request to furnish proof as to the ownership of the bonds presented by him or them by the production of such bonds or by affidavits, or other evidence satisfactory to the trustee, and if such proof be so required and the said request shall be without effect until such proof shall be furnished.

"In every case of default in the payment of the money secured, or any part thereof, or in respect to any covenant or agreement in said bonds or coupons or herein contained, the duty of the said trustee, and also its power to act in the premises, are hereby declared to be subject to the right and power of the majority in interest of the holders of the bonds hereby secured and then outstanding, to require the said trustee to waive such default or to enforce their rights thereunder, the choice of remedies, however, being left to

the trustee, but no action of the said trustee or bondholders in case of any default, shall affect any subsequent default or any right arising therefrom."

The reference in a bond to the mortgage containing the provisions quoted is effective for the purpose of making them by construction a part of the bond. The bonds and mortgage therefore authorize the bondholders to waive defaults and extend maturities. It is equally clear that actions at law on the bonds and suits in equity on the mortgage, unless brought by the trustee pursuant to the terms of the mortgage, are forbidden, unless directed by 25 per cent. of the holders of outstanding bonds—authority never granted to plaintiff. The provisions quoted from the mortgage as parts of the bonds are lawful terms which the contracting parties had power to make and gave notice to and are binding on the purchasers of the bonds. *Munch v. Central West Public Service Co.*, 128 Neb. 645, 259 N. W. 736. The contingency for which the bonds in connection with the mortgage provided and the provision in the mortgage forbidding an action on the bonds at the time therein fixed for payment, unless directed by 25 per cent. of the holders of outstanding bonds, made the instruments on which plaintiff sued non-negotiable within the meaning of the negotiable instruments law. Moreover, the record shows that, without the individual consent of plaintiff, the time for payment of his bonds was extended until January 1, 1947. Plaintiff did not prove fraud in the sale of the bonds or in extensions of times for payments or in the provisions of the mortgage or in the defenses to the action at bar. The dismissal was the only judgment that properly could have been rendered on the record for review. There is no ambiguity or inconsistency in the instruments under consideration to call for an analysis of the decisions of the courts of New York, the state in which the bonds are payable. In view of the conclusion reached on the vital issue, discussion of other questions becomes unnecessary.

AFFIRMED.